# United States Court of Appeals

## For the First Circuit

---

No. 00-1958

MIRRA COMPANY, INC.,

Plaintiff, Appellant,

v.

SCHOOL ADMINISTRATIVE DISTRICT #35
A POLITICAL SUBDIVISION OF THE STATE OF MAINE
WITH PRINCIPAL OFFICES IN SOUTH BERWICK, MAINE,

Defendant Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Boudin, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

David P. Ray, with whom Burns Ray DeLano & Macdonald, P.A.,
Frank P. Spinella, Jr., and Hall, Morse, Anderson, Miller &
Spinella, P.A., were on brief, for appellant.
Jerrol A. Crouter, with whom Drummond Woodsum & MacMahon,
were on brief, for appellee.

June 5, 2001

**STAHL, <u>Senior Circuit Judge</u>**.  This case arose from a dispute between the parties to a construction contract.  The Maine School Administrative District No. 35 (MSAD 35) and the Mirra Company, Inc.(Mirra), had entered into a contract which obligated Mirra to do site work at a high school project in the district.  Problems soon arose, and now each party has claims against the other. The sole question before us is whether the parties must submit these claims to binding arbitration.  Mirra argues that the contract requires disputes to be resolved through arbitration, while MSAD 35 claims that there is no such agreement in the final version of the parties' contract.  The district court agreed with MSAD 35 and held that the contract unambiguously did not require arbitration.  We affirm.

## I. BACKGROUND

In early 1997, the State of Maine Bureau of General Services (BGS) advertised for bids for site work at the new Marshwood High School in South Berwick, Maine.  MSAD 35 is the public school district for that town.  The bid documents provided that the  Standard General Conditions for construction contracts would apply, subject to certain amendments, listed in the attached Supplementary General Conditions.  As relevant here, the Standard General Conditions stated:

<u>Article 42. ARBITRATION</u>

-3-

If, in the performance of this contract, there arises a dispute between the Owner and the Contractor which cannot be settled, then this dispute shall be submitted to Arbitration and both the Owner and the Contractor shall be bound by the decision of the Arbitrator.

The membership of the American Arbitration Association shall be used as Arbitrators and the procedures used for Arbitration shall be in conformity with the Construction Industry Arbitration Rules as administered by the American Arbitration Association.

The Supplementary General Conditions used two different methods to amend the General Conditions. Where only a few words were to be changed, the Supplementary General Conditions merely referenced the article number and title of the relevant General Condition to be changed and the minor alterations were described. But where an entire article was to be substituted with a new one, the Supplemental General Conditions referenced the relevant article number and title and set forth an instruction to delete the article in its entirety and to substitute a new one with a new heading. This second procedure was used with respect to the agreement's original arbitration provision resulting in the following change:

Article 42 - ARBITRATION: Delete in its entirety and substitute:

Article 42 - DISPUTE RESOLUTION:

If, in the performance of this Contract, there arises a dispute between

Contractor and Owner that cannot be resolved by the parties to the Contract, the dispute shall be referred to the Director of the Bureau of General Services, who, at his/her discretion, will submit the dispute to non-binding Alternate Dispute Resolution or binding arbitration (ADR). If the parties in dispute are not satisfied with the results of ADR Owner or Contractor may re-submit the dispute to the Director for binding arbitration.

On May 15, 1997, Mirra submitted its bid to BGS, which was the lowest of all received, and BGS forwarded it to MSAD 35. On June 9, 1997, MSAD 35 sent Mirra a addendum designed to further modify the Bidding and Contract Documents. The addendum did not delete and replace any articles wholesale, as the BGS's Supplementary General Conditions had done, but merely referenced each article it was to modify and set forth what was to be deleted and what was to be added within the relevant article as it most recently stood. On June 23, 1997, Mirra explicitly acknowledged the changes wrought by the addendum and executed the contract. The addendum modified the parties' dispute resolution agreement as follows:

1.04 Supplementary General Conditions, Section 3-B-4, Article 42
DELETE: The entire paragraph
ADD: "Any disputes arising out of or in the course of this Agreement, which cannot be settled through discussion between parties, shall be submitted to mediation before any lawsuit or Demand for Arbitration is filed. When either party requests

> mediation, the parties, [sic] shall attempt to agree on a single mediator to mediate the dispute.  The mediator shall assist the parties in attempting to solve their dispute by agreement.  The parties agree to participate in good faith during the mediation process including the selection of the mediator. The parties agree that they will engage in mediation for at least three days, unless a shorter period is set by the mediator, before abandoning the process. The cost of mediation shall be borne equally by each party.
> Notwithstanding this provision, either party may file suit before or during mediation if the party in good faith deems it necessary to avoid losing the right to sue.  If suit is filed before good faith mediation efforts are completed, the party filing suit will agree to stay until all mediation efforts have been completed.

In early 2000, as the project neared completion, various disputes arose between the parties, and each asserted claims against the other.  As required by the contract, the parties participated in mediation on May 17, 2000, but without success.  MSAD 35 then filed suit against Mirra on May 19, 2000, in the Maine Superior Court.  On May 22, 2000, Mirra filed this diversity action requesting an order to compel arbitration.  On July 1, 2000, the district court held that "the contract is unambiguous and does not require arbitration."  Mirra appeals that decision.

## II. DISCUSSION

-6-

The interpretation of unambiguous contract language is a matter of law reserved to the courts. Golden Rule Ins. Co. v. Atallah, 45 F.3d 512, 516 (1st Cir. 1995) ("Under Maine's general law of contracts, the interpretation of a contract is a question for the fact finder only if the court first determines that the contract is ambiguous, a question of law."). For this reason, we afford de novo review to the district court's ruling. Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 18-19 (1st Cir. 2000).

Arbitration is a contractual matter, and no party may be forced to arbitrate a dispute unless she has expressly agreed to do so by contract. Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 876 (1998). In determining whether the parties to a contract have agreed to arbitrate their disputes, courts "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Maine requires "clear contractual language evidencing an intent to be bound to [arbitrate]." Maine Cent. R.R. v. Bangor & Aroostook R.R., 395 A.2d 1107, 1116 (Me. 1978); see also Roosa v. Tillotson, 695 A.2d 1196, 1197-98 (Me. 1997).

Here, there is no language in the final version of the contract that clearly suggests an intent to arbitrate. Article

42, as revised by the addendum, only requires non-binding mediation, after which either party may file suit or seek arbitration (with the consent of the other party). Mirra does not suggest a different interpretation of this language. Rather, its central argument is that, when the final addendum deleted the ADR paragraph from the revised Article 42, it also deleted the preceding instruction to delete the original Article 42, thus resulting in its reinstitution.

We do not agree. The Supplementary General Conditions removed the arbitration clause found in the Standard General Conditions, and replaced it with an entirely new dispute resolution clause. The addendum merely changed the language of that new clause so as to require mediation rather than ADR. The contract unambiguously does not require arbitration. Thus, either party is free to bring a lawsuit against the other for damages arising from a breach of the contract.

The judgment of the district court is **affirmed**.