**Robert O. MUDGE, Pro Se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 00–228 C.**

United States Court of Federal Claims.

Oct. 17, 2001.

Robert O. Mudge, pro se, Sparks, Nevada.

Thomas B. Fatouros, with whom were Deputy Assistant Attorney General Stuart E. Schiffer, Director David M. Cohen, Assistant Director Todd M. Hughes, Department of Justice, Washington, D.C., for defendant. Sheryl Williams, Office of Chief Counsel, Federal Aviation Administration, of counsel.

Barbara A. Atkin, Washington, D.C., for amicus curiae National Treasury Employees Union. Gregory O'Duden and Larry J. Adkins, of counsel.

## OPINION

WIESE, Judge.

### INTRODUCTION

Plaintiff, a *pro se* litigant, sues here to recover back pay allegedly due him as an employee of the Federal Aviation Administration. Defendant has challenged this court's jurisdiction over the claim, asserting that § 7121(a) of the Civil Service Reform Act of 1978, as interpreted by the Federal Circuit in *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.1990), limits plaintiff to administrative, rather than judicial remedies.

The National Treasury Employees Union has joined the suit as an amicus curiae on plaintiff's behalf. This court possesses jurisdiction, in amicus's view, because the holding of *Carter v. Gibbs* was superseded by subsequent legislative change. Under that theory, the 1994 amendment to 5 U.S.C. § 7121(a) (1994) recognized a federal employee's right to a judicial remedy, notwithstanding the availability of an administrative remedy under a collective bargaining agreement.

The case is now before the court on defendant's motion to dismiss and plaintiff's opposition thereto. The court heard oral argument on October 11, 2001, at the conclusion of which it announced a decision in defendant's favor. This opinion explains, in greater detail, the basis for the court's bench ruling.

### BACKGROUND

Plaintiff, a former maintenance mechanic employed by the Federal Aviation Administration ("FAA"), was stationed in Reno, Nevada from 1986 until the end of 1989. He was then voluntarily transferred to a duty station in King Salmon, Alaska, where he worked from January 1, 1990 through March 22, 1992. At the end of March 1992, plaintiff returned to work in Nevada, where he re-

mained until his retirement on December 31, 1995.

The terms of plaintiff's employment with the FAA were governed by a collective bargaining agreement. That agreement was the result of negotiations between the FAA and the Professional Airways Systems Specialists trade union, of which plaintiff was a member. As required by law, the agreement set forth procedures to deal with employee grievances. Generally, these procedures involved increasing levels of internal administrative review, beginning with the employee's immediate supervisor and continuing, where necessary, into binding arbitration. Review of arbitral awards, in turn, was available before the Federal Labor Relations Authority pursuant to 5 U.S.C. § 7122 (1994).

Plaintiff's claim arises from his work transfers and has two counts. First, plaintiff contends that while working in Alaska, he was entitled to a 12 percent "pay differential"—an addition to his base salary—to account for Alaska's higher cost of living. Plaintiff insists that, because other government agencies provided their employees with such salary adjustments, he, too, should have received one from the FAA. In the second count of his complaint, plaintiff alleges that he was entitled to the benefit of "pay retention" upon his return to Nevada. Although plaintiff's grade level did not change as a result of his relocation to Nevada, his hourly wage rate there was adjusted downward to reflect the then-current pay schedule applicable in Nevada. According to plaintiff, however, this reduction in wage rate violated federal pay regulations. Specifically, plaintiff argues that because his reassignment to Nevada was prompted by medical reasons (rather than for his personal convenience), he was entitled to retain the higher wage rate that had applied to his position in Alaska.

As contemplated by the procedures set forth in the collective bargaining agreement, plaintiff filed his grievance with the union. However, for reasons not explained in the record, the union decided to proceed only with respect to the pay differential claim. As to this claim, the FAA took the position that pay differentials were discretionary rather than mandatory payments, and that in lieu of such payments, FAA employees serving in higher wage-rate areas were provided instead with in-kind benefits such as housing and transportation expenses. Accordingly, plaintiff's claim was rejected. The union did not take the matter into arbitration.

Following his unsuccessful efforts to obtain relief under the grievance procedures, plaintiff attempted to secure a review of his claims before the General Accounting Office. That office, however, declined to hear the case on the ground that under 5 U.S.C. § 7121(a)(1), the procedures established in plaintiff's collective bargaining agreement represented the exclusive means for resolving his grievances. Comp. Gen., Z–2869595 (May 8, 1995).

Plaintiff next attempted to obtain a hearing on his claims before the Merit Systems Protection Board, but there too he was unsuccessful. The Board ruled that review of plaintiff's claims was not within its grant of authority, and hence dismissed his petition for lack of jurisdiction. *Mudge v. Dep't of Transp.*, Nos. SE–3443–97–0494–I–1 and SE–3443–98–0061–I–1 (Jan. 20, 1998). Plaintiff filed his complaint in this court on April 24, 2000.

## DISCUSSION

Until amended in 1994, § 7121(a) of the Civil Service Reform Act read as follows:

(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section [allowing, as an alternative remedy, appeal to the Merit Systems Protection Board on certain matters], the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

5 U.S.C. § 7121(a) (1988).

In *Carter v. Gibbs, supra,* the Federal Circuit interpreted the above-quoted language as limiting a federal employee's remedies in

grievance proceedings to those specified by the collective bargaining agreement. Other means of redress, the court held, were unavailable, with the result that this court was without jurisdiction to hear such claims.

In 1994, Congress amended the Civil Service Reform Act by enlarging the remedies available to certain federal employees. Specifically, section 9(b) of Public Law No. 103–424, 108 Stat. 4361, 4366 (1994), added a new subsection to § 7121 that extended to employees facing alleged reprisals for "whistle-blowing" a choice of three administrative remedies: appeal to the Merit Systems Protection Board, reliance on negotiated grievance procedures, or corrective action before the Office of Special Counsel. 5 U.S.C. § 7121(g).

In conjunction with the addition of subsection (g) to § 7121, Congress also added conforming and technical amendments to § 7121(a) to reflect the statutory enlargement. Thus, § 7121(a) now reads as follows:

> (1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e), *and (g)* of this section, the procedures shall be the exclusive *administrative* procedures for resolving grievances which fall within its coverage.
>
> (2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

(Emphasis added).

The underscored language—*i.e.*, the addition of the reference to subsection (g) and the addition of the word "administrative"—identifies the changes made to § 7121. And it is the addition of the word "administrative" that gives rise to the present argument.

Plaintiff and amicus contend that the introduction of the word "administrative" into the text of § 7121(a) reflects congressional intent to set aside the holding in *Carter v. Gibbs.* Through the repudiation of that decision, they argue, Congress intended to restore a federal employee's right to pursue judicial remedies for the redress of claims, even when such claims might also be redressable under the grievance procedures of an existing collective bargaining agreement. Thus, for example, a plaintiff would arguably have a right to pursue his pay claims under the Back Pay Act, 5 U.S.C. § 5996 (1994), even though those claims also fall within the scope of the grievance procedures set forth in the union's collective bargaining agreement.

Plaintiff and amicus offer two arguments in support of this contention, the first resting on the meaning of the word "administrative," and the second on legislative history. They argue first that the term "administrative" is commonly understood to refer to functions or acts that are distinct from those performed in a judicial capacity. *See* Blacks Law Dictionary 1296 (7th ed.1999)(defining "administrative" as a "nonjudicial remedy provided by an administrative agency."). As a consequence, they contend, the statutory provision that makes a collective bargaining agreement's grievance procedures the "exclusive administrative procedures" can have no effect on an employee's right to pursue non-administrative, judicial causes of action. That is the case, they maintain, because Congress, by inserting the word administrative to create the phrase "exclusive administrative procedures," removed by implication the barrier to the assertion of a judicial remedy that the statute's earlier language had imposed.

 We cannot, however, accept this approach to statutory analysis. A statute is an organized expression of ideas, the full and proper understanding of which requires us to look to the entirety of the language used. The meaning of a statute cannot be determined by reading its words in isolation. *King v. St. Vincent's Hospital,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) ("[T]he cardinal rule [is] that a statute is to be read as a whole ... since the meaning of statutory language, plain or not, depends on context." (citation omitted)). Thus, all the words of a statute are to be taken into account, and where possible, all are to be given effect. *Administrator, Federal Aviation Administration v. Robertson,* 422 U.S. 255, 261, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975). Consistent with this basic instruction, courts

should avoid, where possible, the construction of a statute that leaves some of its provisions superfluous. *Bell v. New Jersey,* 461 U.S. 773, 789, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983).

■ The interpretation proposed by plaintiff and amicus violates this basic tenet of statutory construction. To accord to the term "administrative" the result that is urged would render the second paragraph of § 7121(a) superfluous. That paragraph states that "[a]ny collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement." What this language means, in practical terms, is that where a union seeks to preserve a judicial remedy for the resolution of specific types of claims, it is free to negotiate for the exclusion of such claims from the scope of the collective bargaining agreement's grievance procedures. Obviously, however, this statutory right to bargain for the preservation of judicial remedies would be meaningless if, as is argued here, such remedies remain accessible even where they parallel matters for which relief would also be available under the grievance procedures of an existing collective bargaining agreement. Surely it should require more than proof of intention based on implication to ascribe to Congress a result—whether intended or not—of enacting legislation containing contradictory provisions. Indeed, case law instructs that "it can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change." *United States v. Fausto,* 484 U.S. 439, 453, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988).

Plaintiff and amicus insist, however, that theirs is the correct reading of the statute. To bolster their argument, they refer us to the hearings on H.R. 2970—the bill that, as ultimately enacted, added the word "administrative" to the text of § 7121(a). Although H.R. 2970 was chiefly concerned with improving protections against reprisal for those federal employees who reported official misconduct, the hearings on the bill also included testimony from a representative of the National Treasury Employees Union urging a change in existing law to overturn the result in *Carter v. Gibbs.* That testimony reads as follows:

> One final suggestion that I might make, if the grievance procedure is made exclusive, we believe the law should be clarified that it would only be the exclusive administrative remedy but would not foreclose judicial remedies contained in other statutes, and I particularly point to the Federal Circuit's decision in Carter versus Gibbs .... Congress intended the grievance procedure to be a strong avenue but courts have misinterpreted that intent to take away the individual rights of individual employees under, for example, the overtime pay statutes and the Privacy Act to go to court.

*To Reauthorize the Office of Special Counsel and to Make Amendments to the Whistleblower Protection Act: Hearing on H.R. 2970 Before the Subcomm. on the Civil Serv. of the House Comm. on Post Office and Civil Serv.,* 103d Cong. 21 (1993) (statement of Tim Hannapel, assistant counsel in the Office of General Counsel, National Treasury Employees Union).

Plaintiff points to the foregoing testimony as evidence that Congress was heeding the call to overrule *Carter v. Gibbs* when it added the word "administrative" to the text of § 7121(a). We see no basis, however, on which to sustain this argument. As initially reported, H.R. 2970 contained no reference to the term "administrative," nor, for that matter, did the House report that accompanied that bill—H.R. REP. NO. 103–769 (1994). Indeed, that report is devoid of any language to suggest that the overruling of *Carter v. Gibbs* was part of the law's purpose. Nothing more can be gleaned from the relevant legislative history, save that the word "administrative" was added to the text of H.R. 2970 as part of a technical amendment introduced immediately preceding the Senate's consideration of the bill. There is, however, no explanation for this addition. *See* 140 Cong. Rec. 28,825 (1994).

In an effort to bridge this moat of legislative silence, plaintiff and amicus draw upon two earlier-published House committee reports that accompanied H.R. 2721—a different legislative measure focused primarily on

improving the effectiveness of administrative review of employment discrimination claims by federal employees. That bill proposed, *inter alia*, to amend 5 U.S.C. § 7121(a) by adding to its text the word "administrative." In explaining this proposed change to § 7121(a), the Committee on Education and Labor stated that the amendment

> clarifies Congress' original intent that the grievance procedure would be an exclusive administrative procedure for matters that it covers. The grievance procedure was never intended to deprive employees of access to the courts. This clarification is necessary to correct an erroneous decision of the U.S. Court of Appeals for the Federal Circuit, *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.1990), cert. denied sub nom. *Carter v. Goldberg,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990), which denied employees the right to judicial review of claims under the Fair Labor Standards Act.

*Federal Employee Fairness Act of 1994,* H.R. REP. 103–599, pt. 1, at 56 (1994).

Subsequently, the Committee on Post Office and Civil Service (the same committee that later reported on H.R. 2970) similarly reported favorably on the identical amendment to 5 U.S.C. § 7121(a), also offered by Representative McCloskey, the sponsor of H.R. 2970 (the bill that was eventually passed). This report states that the purpose of the amendment "is to clarify that section 7121 is not intended to limit judicial remedies otherwise provided by law." *Federal Employee Fairness Act of 1994,* H.R. REP. 103–599, pt. 2, at 16, 75 (1994).

Plaintiff and amicus see each of the above-referenced committee reports as providing strong evidence of the congressional intent underlying the introduction of the word "administrative" into the text of § 7121(a). We do not. Indeed, rather than reinforcing plaintiff and amicus's position, these reports highlight the omission from H.R. 2970 and its accompanying report of any mention of an intended change to § 7121(a). Had there been such a continuity of legislative purpose with respect to the addition of the word "administrative" as plaintiff and amicus argue, then surely that purpose would have

been reexpressed in H.R. 2970 and its accompanying report. That such reexpression did not occur robs the argument of any value.

Given the absence of any demonstrated connection between the hearing testimony that plaintiff and amicus have cited and the legislative intention they seek to attribute to that testimony, we can see no basis upon which to endorse their argument. And that is particularly true since the argument, if it prevailed, would assign substantive content to a statutory term that was introduced simply as a technical amendment.

In contrast to the fundamental change in meaning of § 7121(a) that plaintiff and amicus attribute to the introduction of the word "administrative," defendant emphasizes that that word was introduced as a technical amendment to a H.R. 2970 and therefore should be understood, not as a substantive enlargement of that of that legislation, but rather as a clarification of it. That clarification was made necessary, in defendant's view, by the addition of subsection (g) to § 7121, which added additional administrative remedies to those already available under the Act. Under that theory, the word "administrative" does no more than make plain that the negotiated grievance procedure is the employee's only remedy, except where § 7121 explicitly offers a choice of other administrative remedies (as is the case with grievances falling under the scope of subsections (d), (e) and (g)). The amendment, defendant argues, thus preserves, rather than overturns, the ruling in *Carter v. Gibbs.*

We endorse defendant's position for two basic reasons. First, it avoids the contradiction between paragraphs (1) and (2) of § 7121(a) that plaintiff's interpretation occasions. Such a result is much to be preferred because, as the Supreme Court has observed, "[a]n interpretation of the statute which would ... render different sections inconsistent with each other, cannot be the true one." *Perrine v. Chesapeake and Delaware Canal Co.,* 50 U.S. (9 How.) 172, 13 L.Ed. 92 (1850). Second, but perhaps more important, it maintains the primacy and exclusivity of the collective bargaining agreement's grievance procedure as the congressionally-preferred method for resolving employee grievances.

**506**

That procedure, as case law recognizes, was one of the principal reforms introduced by the Civil Service Reform Act of 1978: "[T]he Congressionally unambiguous and unmistakable preference for exclusivity of arbitration is a central part of the comprehensive overhaul of the civil service system provided by the CSRA." *Muniz v. United States,* 972 F.2d 1304, 1309 (Fed.Cir.1992). We find it inconceivable that Congress intended to alter this basic structural reform of the Civil Service Reform Act by a one-word change that was introduced as a technical amendment without discussion, explanation, or debate.

## CONCLUSION

On the basis of the reasons stated, the court concludes that this suit must be dismissed for lack of jurisdiction pursuant to the ruling in *Carter v. Gibbs.* Accordingly, the Clerk is directed to enter judgment dismissing the complaint. No costs.