**Robert O. MUDGE, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–228–C.

United States Court of Federal Claims.

Jan. 26, 2004.

Robert O. Mudge, pro se, Sparks, Nevada.

Thomas B. Fatouros, Trial Attorney, Commercial Litigation Branch, Department of Justice, Washington, D.C., argued for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, and Todd M. Hughes, Assistant Director, Commercial Litigation Branch. Sheryl Williams, Office of the Chief Counsel, Federal Aviation Administration, was of counsel.

Timothy B. Hannapel, Assistant Counsel, argued for amicus curiae National Treasury Employees Union, Washington, D.C., supporting Mr. Mudge on jurisdictional issues associated with interpretation of the Civil Service Reform Act. With Mr. Hannapel on the briefs were Gregory O'Duden, General Counsel, and Larry J. Adkins, Deputy General Counsel.

### OPINION AND ORDER

LETTOW, Judge.

This case is before the Court on a remand from the Federal Circuit. Plaintiff, Robert O. Mudge, seeks back pay he alleges is owed for his service from 1990 through 1995 as an employee of the Federal Aviation Administration ("FAA"). Prior proceedings led to a decision by this Court dismissing Mr. Mudge's complaint for lack of jurisdiction and then to a reversal by the Federal Circuit and a remand to this Court. *See Mudge v. United States*, 308 F.3d 1220 (Fed.Cir.2002) (*"Mudge II "*), *rev'g* 50 Fed.Cl. 500 (2001) (*"Mudge I "*). On remand, the government has again moved for dismissal or, in the alternative, for summary judgment.

The renewed motion principally turns on an issue reserved by the Federal Circuit. In *Mudge II*, the Court of Appeals addressed the effect of an amendment in 1994 to Section 7121(a)(1) of the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 7101–7135, that added the word "administrative" to a provision contemplating that grievance procedures in a collective bargaining agreement constituted the exclusive remedy for a federal employee regarding certain disputes arising within the employment relationship. 308 F.3d at 1222–23. The Court of Appeals decided that the amendment restricted the reach of the allowable exclusivity to administrative remedies, and thus the statute as amended did not foreclose a judicial action on the part of the allegedly aggrieved employee. However, it declined to resolve "the issue of whether the terms of Mr. Mudge's collective bargaining agreement ('CBA') independently deprived [this Court] of jurisdiction [over his claim]." *Id.* at 1221. The government uses this reserved issue as a platform for arguments that focus on a union's role and power as exclusive representative of employees under the CSRA. The parties have fully briefed their positions, and a hearing was conducted

on December 15, 2003.[1] For the reasons that follow, the government's motion is denied.

## BACKGROUND

Mr. Mudge was a maintenance mechanic employed by FAA. Compl. at 1–2. The terms of his employment were governed by a collective bargaining agreement between FAA and his union, the Professional Airways Systems Specialists ("PASS" or "union"). NTEU Br. Ex. 1. Initially, he worked in Reno, Nevada, but he was reassigned to King Salmon, Alaska, where he worked from January 1, 1990, through March 21, 1992, Compl. at 1–2, at which point he returned to Reno due to medical reasons. He worked again at Reno from March 22, 1992, until his retirement on December 31, 1995. *Id.* at 3–4.

Mr. Mudge's claim arises from his work transfers between Nevada and Alaska and consists of two counts. First, he avers he was entitled to a twelve percent pay differential during his service in Alaska. *Id.* at 2–3. Second, he seeks pay retention following his return to Reno, alleging he was entitled to retain the higher wage rate payable for working in Alaska. *Id.* at 3–4.[2] Pursuant to the procedure set forth in the bargaining agreement, Mr. Mudge filed with his union a grievance for each of his two grounds for relief. Pl.'s Record Supplement (Dec. 20, 2000) (hereafter "Rec. Supp."), Ex. 5 (Grievance Record—Pay Differential (Jan. 7, 1991)), Ex. 6 (Grievance Record—Pay Retention (Apr. 16, 1992)). The union, however, decided not to pursue Mr. Mudge's pay-retention claim, Pl.'s Supplemental Statement (Jan. 18, 2001) (hereafter "Supp. Stmt."), Ex. 3 (Letter from PASS (Oct. 13, 1993)), and proceeded only with respect to his pay-differ-

ential claim. The FAA rejected that claim, Pl.'s Opp'n, Ex. 6 (FAA Administrative Report (Feb. 27, 1995)), and the union declined to take the matter to arbitration.[3]

Having failed to obtain redress through the grievance procedure, Mr. Mudge, through an attorney, submitted a claim to the General Accounting Office ("GAO"). Relying on *Carter v. Gibbs*, 909 F.2d 1452 (Fed.Cir. 1990), GAO determined that it lacked jurisdiction over Mr. Mudge's claim under 5 U.S.C. § 7121(a)(1). Pl.'s Opp'n, Ex. 7 (GAO decision, Z–2869595 (May 8, 1995)). Thereafter, Mr. Mudge's request for reconsideration of GAO's decision was denied by the Office of Personnel Management ("OPM"). *Id.*, Ex. 16 (OPM decision (Aug. 10, 1999)).

Mr. Mudge's attempt to seek relief through his attorney from the Merit Systems Protection Board ("MSPB" or "Board"), was likewise unsuccessful. The Board dismissed his claim, ruling that the pertinent regulations did not provide for a right of appeal to the Board. Supp. Stmt., Ex. 2 (MSPB decision, Nos. SE–3443–97–0494–I–1 and SE–3443–98–0061–I–1 (Jan. 20, 1998)).

On a *pro se* basis, Mr. Mudge filed a complaint in this Court on April 24, 2000. As noted earlier, the Court dismissed his complaint on jurisdictional grounds, finding that 5 U.S.C. § 7121(a) of the CSRA limits a federal employee to administrative remedies. *Mudge I*, 50 Fed.Cl. 500. The pertinent statutory language provides as follows:

(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e), and (g) of this sec-

1. The National Treasury Employees Union ("NTEU") participated in the proceedings as an *amicus curiae* on Mr. Mudge's behalf respecting jurisdictional issues arising under the CSRA.

2. Mr. Mudge was paid on the basis of a prevailing rate system adopted pursuant to 5 U.S.C. §§ 5341–49, as implemented through rate determinations made by the Office of Personnel Management. *See* 5 C.F.R. Part 532. These rate determinations were supplemented by, among other things, provisions of the applicable collective bargaining agreement. A specific money-mandating statute, 5 U.S.C. § 5343(a), applies to

"prevailing rate employees." *See Ainslie v. United States*, 355 F.3d 1371, 1375 (Fed.Cir.2004) (citing *Averi v. United States*, 23 Cl.Ct. 127, 135 (1991)).

3. Under the CSRA, arbitration may be invoked by either the employee's exclusive representative (in this case PASS), or the agency. *See* 5 U.S.C. § 7121(b)(1)(C)(iii). Likewise, Article 5, Section 8 of the applicable collective bargaining agreement authorizes the union, but not an individual employee, to instigate arbitration.

tion, the procedures shall be the exclusive *administrative* procedures for resolving grievances which fall within its coverage.

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

5 U.S.C. § 7121(a) (emphasis added).[4] Prior to 1994, Section 7121(a)(1) did not contain the term "administrative," but rather "stated that the procedures set forth in a bargaining agreement would 'be the exclusive procedures for resolving grievances which f[e]ll within its coverage.'" *Mudge II*, 308 F.3d at 1223 (quoting 5 U.S.C. § 7121(a)(1) (1988)). In *Mudge I*, the Court relied for its holding on *Carter v. Gibbs*, 909 F.2d 1452 (Fed.Cir. 1990), *cert. denied sub nom. Carter v. Goldberg*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990), in which the Federal Circuit had interpreted the pre–1994 language to preclude federal employees from resolving grievances covered by their bargaining agreement in a judicial forum. 50 Fed.Cl. at 506. The Court rejected Mr. Mudge's argument that the 1994 amendment overruled *Carter v. Gibbs* and interpreted the addition of the term "administrative" merely to clarify that the grievance procedure contained in a federal employee's bargaining agreement is the employee's only remedy, excepting only the grievances for which Section 7121 explicitly provides a choice of administrative remedies, as it does in Subsections (d), (e), and (g). *Id.* at 505.

The Federal Circuit reversed the dismissal of Mr. Mudge's claim, holding that the addition of the term "administrative" to Section 7121(a)(1) effectively overruled *Carter* by "establish[ing] a federal employee's right to seek a judicial remedy for employment grievances subject to the negotiated procedures contained in his or her [collective bargaining agreement]." *Mudge II*, 308 F.3d at 1227. The Federal Circuit gave the word "administrative" its plain meaning and concluded that "[t]he plain language of § 7121(a)(1) as

amended is therefore clear: while § 7121(a)(1) limits the administrative resolution of a federal employee's grievances to the negotiated procedures set forth in his or her [collective bargaining agreement], the text of the statute does not restrict an employee's right to seek a judicial remedy for such grievances." *Id.* at 1228. In effect, the 1994 amendment lifted a statutory bar to an individual member's invocation of a remedy in court.

In the proceedings before the Court of Appeals, the government alternatively argued that the terms of the collective bargaining agreement covering Mr. Mudge's employment constituted a waiver of his right to seek a judicial remedy by requiring that grievances be submitted to binding arbitration. *Id.* at 1233. Because the trial court did not address this issue, the Federal Circuit declined to decide it and remanded the case for further proceedings. *Id.* at 1221, 1233.

### STANDARD FOR DECISION

The government invokes Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") to seek a dismissal of Mr. Mudge's complaint for lack of subject matter jurisdiction. Alternatively, it requests dismissal for failure to state a claim upon which relief can be granted, RCFC 12(b)(6), or a summary judgment against Mr. Mudge on the merits. RCFC 56(c).

#### A. Motion To Dismiss

The subject matter jurisdiction of the Court of Federal Claims is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed.Cir.1998) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Such a waiver "cannot be implied but must be unequivocally expressed." *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King*, 395 U.S. 1, 4, 89

---

**4.** The amendment was included within an authorization enacted for the United States Office of Special Counsel, Merit Systems Protection Board. *See* Pub.L. No. 103–424, § 9(c), 108 Stat. 4361 (1994) (codified in scattered sections of 5 and 12 U.S.C.). In addition to adding the

word "administrative" to Section 7121(a)(1), Congress added a new subsection (g) to Section 7121, which extended to "whistleblowers" a choice of administrative remedies. *See* Pub.L. No. 103–424, at § 9(b).

S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The Tucker Act, 28 U.S.C. § 1491(a), which provides the basis for this Court's jurisdiction over this case, does not itself create a substantive cause of action, *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), but rather a plaintiff must "invoke substantive rights grounded expressly or by implication in a contract, an act of Congress or a regulation of an executive department." *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc) (citing *United States v. Mitchell,* 463 U.S. 206, 217 & n. 16, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)).

When a federal court hears a challenge to its jurisdiction, whether for failure to state a claim or for lack of subject matter jurisdiction, "its task is necessarily a limited one." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir.2002). Thus, a court must construe the facts alleged in the complaint favorably to the claimant. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. Nonetheless, the plaintiff bears the burden of establishing jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Ware v. United States,* 57 Fed.Cl. 782, 784 (2003); *Bond v. United States,* 43 Fed.Cl. 346, 348 (1999).

### B. Summary Judgment

Summary judgment is proper if the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of material fact exists if a rational finder of fact could reach only one reasonable conclusion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In making this determination, a court must resolve any doubt over a factual issue in favor of the nonmoving party. *Id.* at 587–88, 106 S.Ct. 1348.

### ANALYSIS

The government makes three different arguments in support of its motion to dismiss Mr. Mudge's complaint: (1) by according unions the status of employees' "exclusive representative," 5 U.S.C. § 7114(a)(1), the CSRA empowers unions to divest unit members of their individual right to seek a judicial remedy, (2) the collective bargaining agreement to which Mr. Mudge was subject divests him of that right, and (3) Mr. Mudge's complaint is barred by the six-year statute of limitations applicable to Tucker Act claims. *See* 28 U.S.C. § 2501.

### A. Union Power

As the government would have it, a union's authority to "act for, and negotiate collective bargaining agreements covering, all employees in the unit," 5 U.S.C. § 7114(a)(1),[5] entails the power to waive or elide an individual employee's right to present employment claims in a judicial forum. Hr'g Tr. at 22 ("[T]he power to act for [employees] includes the power to foreclose judicial remedy."). The government argues that a union's possession of this power remains unaffected by the 1994 amendment to the CSRA. *See id.* at 17 ("[T]he parties if they agreed to this language today or agreed to other language specifically saying we're not going to take pay differential cases to court, the union has that power today, they had that power in 1992."). The government notes that the 1994 amendment did not establish a right but merely removed a statutory barrier to judicial redress. In its view, a union remained the ultimate gatekeeper to judicial access. *See id.* at 20 ("In 1994 the barrier to coming to court was lifted but the union still had the power to bind its mem-

---

**5.** A union acquires this power by "be[ing] accorded exclusive recognition," thereby becoming the employees' "exclusive representative." 5 U.S.C. § 7114(a)(1).

bers. It still had the power to say these areas are going to go through the grievance procedure only and these other areas can come to court.").

The government relies heavily on *O'Connor v. United States,* 308 F.3d 1233 (Fed.Cir. 2002), which was decided by the same panel on the same day as *Mudge II. O'Connor* involved grievances filed by eleven unions on behalf of their unit members against a federal agency alleging the agency had violated the employees' rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201– 219. 308 F.3d at 1236–37. The parties entered into a "global settlement agreement" under which the agency agreed to pay more than $5 million to the employees. *Id.* at 1237. Roughly a year later, some of those employees sought to re-litigate the same claim in this Court. *Id.* The Court dismissed the complaint, following the rationale in *Carter,* but it also assumed *arguendo* that it possessed jurisdiction and granted partial summary judgment in favor of the government on the ground that the settlement constituted a valid accord and satisfaction of the employees' claim. *Id.* at 1238–39. The Federal Circuit reversed the dismissal for lack of jurisdiction, relying on *Mudge II* to hold that this Court had jurisdiction, but it affirmed the Court's grant of partial summary judgment for the government on the ground of accord and satisfaction. *Id.* at 1244. The government in the instant case asserts that *O'Connor* "leads to the inevitable conclusion that the grievance procedure shall be exclusive when specifically bargained for in a collective bargaining agreement." Def.'s Mot. at 8.

The National Treasury Employees Union as *amicus curiae* counters that the 1994 amendment to Section 7121(a)(1), as recognized by the Federal Circuit in *Mudge II,* limits to *administrative* procedures the scope of the exclusive remedies a union may negotiate. NTEU Br. at 13. NTEU argues that the amendment "thus sets the outer limits of the agreement unions and agencies may reach, and defines the only forums—

administrative—which the grievance procedure may supplant." *Id.* NTEU distinguishes *O'Connor* on the grounds that Mr. Mudge never got a bite at the administrative-remedy apple, whereas that case involved a settlement of an administrative claim and is limited to the doctrine of accord and satisfaction. *Id.* at 16. Finally, *amicus* NTEU relies on precedents holding that private-sector unions lack the power prospectively to waive an individual's statutory right to a judicial remedy. *Id.* at 17–18.

The government's contention that a union has power to negotiate away a federal employee's access to a judicial forum is without merit. First, the government's reliance on *O'Connor* is misplaced. The *O'Connor* court elaborated on the effect of the 1994 amendment to the CSRA, explaining that it allowed federal employees to seek judicial redress "outside the corners of their collective agreement":

> With the 1994 amendments to the CSRA ... Congress expanded the scope of [a unionized federal] employee's rights. By providing that the negotiated grievance procedures established in a CBA are to be "the exclusive *administrative* procedures" as opposed to the "exclusive procedures for resolving grievances which fall within its coverage," 5 U.S.C. § 7121(a)(1) (2000), these amendments allowed federal employees to seek redress of their grievances in court and therefore *outside the corners of their collective agreement.* Nothing in the 1994 amendments altered the breadth of federal employees' right to administrative grievance relief[;] however, such administrative rights therefore remain consolidated within the terms of their CBA.

308 F.3d at 1244 (second emphasis added) (internal citation omitted). In settling its unit members' claims, the union in *O'Connor* acted pursuant to the grievance procedure contained in the pertinent bargaining agreement. This procedure· constituted the exclusive administrative remedy, but the Federal Circuit did not hold that such exclusivity foreclosed a judicial remedy.[6] Instead, as a

---

6. The relevant terms of the collective bargaining agreement at issue in *O'Connor* were identical to those in the instant case. *See O'Connor,* 308

F.3d at 1237 ("the *exclusive* procedure available"). In that case, however, the government did not at any stage of the proceedings raise the

jurisdictional matter, the Court of Appeals explicitly stated that the statutory amendment entitled federal employees to seek redress "outside the corners of their collective agreement." *Id.* The Court's conclusion that the employees in *O'Connor* were not entitled to a judicial remedy on the merits did not mean they were not entitled to seek one.

Second, a union's power under the CSRA to represent federal employees is different from the power of a union in the private sector to represent employees in a bargaining unit. Nonetheless, precedents from private-sector union bargaining tend to confirm the foregoing interpretation of limits on a union's power under the CSRA. In *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 75–77, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), the Supreme Court observed, but did not resolve, the tension between two lines of its precedents. Under one branch, represented by *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 51–52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), "an employee's rights under Title VII [of the Civil Rights Act of 1964] are not susceptible of prospective waiver." Under the second, represented by *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33–35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the right to a judicial forum for a statutory claim could be waived by an *individual* employee. The Supreme Court in *Wright* reserved the question "whether or not *Gardner–Denver's* seemingly absolute prohibition of union waiver of employees' federal forum rights survives *Gilmer*," ruling on the narrower ground that the bargaining agreement at issue did not contain a "clear and unmistakable" waiver of the employees' right to a judicial forum. 525 U.S. at 80, 119 S.Ct. 391.

After *Wright*, a number of courts of appeals have sought to resolve the tension between these two lines of cases, and the resulting common-law distillation process has produced results. The D.C. Circuit has observed that there is "a clear rule of law emerging from *Gardner–Denver* and *Gilmer*: Unless the Congress has precluded his doing so, an individual may prospectively waive his own statutory right to a judicial forum, but his union may not prospectively waive that right for him." *Air Line Pilots Ass'n v. Northwest Airlines, Inc.*, 199 F.3d 477, 484 (D.C.Cir.1999), *judgment reinstated,* 211 F.3d 1312 (D.C.Cir.2000) (en banc). Of the nine circuits that have considered the meaning of *Gardner–Denver* subsequent to *Gilmer,* all but the Fourth Circuit support this interpretation. *Compare Rogers v. New York Univ.*, 220 F.3d 73, 75 & n. 1 (2d Cir.2000) (collecting cases) *and Air Line Pilots,* 199 F.3d at 484 (same); *with Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 885 (4th Cir.1996). Accordingly, under *Gardner–Denver,* as interpreted by a majority of courts of appeals, "[a]bsent congressional intent to the contrary, a union may not use the employees' individual statutory right to a judicial forum as a bargaining chip to be exchanged for some benefit to the group; the statutory right 'can form no part of the collective bargaining process.'" *Air Line Pilots,* 199 F.3d at 484 (quoting *Gardner–Denver,* 415 U.S. at 51, 94 S.Ct. 1011). Because there is no evidence that Congress intended that the right of a federal employee to seek a judicial remedy regained through the 1994 amendment to Section 7121(a) could be bargained away by a union, Mr. Mudge's union lacked the power to waive a right that belongs to him as an individual member—not to the group.

Third, in response to NTEU's reliance on the *Gardner–Denver* and *Gilmer* line of authorities, the government argues that private-sector employment case law is inapposite to the federal-sector context. The government reads the Federal Circuit as having "flatly rejected," Def.'s Mot. at 10, the application of private-sector law to the federal-sector context when it recognized in *O'Connor* that "private-sector law is not controlling in the context of federal labor controversies." Def.'s Mot. at 10 n. 1 (quoting *O'Connor,* 308 F.3d at 1242–43) (citing *Karahalios v. National Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527,

---

argument that union action through the collective bargaining agreement deprived the courts of jurisdiction, and neither court so held. Instead, the trial court dismissed the claims on the ground that the CSRA deprived it of jurisdiction, and the Federal Circuit reversed that jurisdictional holding.

535, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989)); *see also Carter v. Gibbs,* 909 F.2d 1452, 1457 (Fed.Cir.1990); *O'Connell v. Hove,* 22 F.3d 463, 471 (2d Cir.1994). The government is manifestly correct as to the rationale underlying these cases. "Unlike the circumstances in the private sector that prompted Congress to pass the FLSA, in the Federal sector, the CSRA process provides sufficient indicia of trustworthiness that the minimum substantive guarantees found in the FLSA are appropriately safeguarded *when vindicated through the statutorily-crafted, agreed upon, grievance procedure.*" Def.'s Reply at 8 (emphasis added).[7] The government errs, however, in failing to recognize what happens when a federal employee's grievances are *not* vindicated through the negotiated grievance procedure contained in the employee's collective bargaining agreement. When a union declines, for example, to pursue a grievance of a unit member or to take that grievance to arbitration, such an employee has, by .statute, no *administrative* recourse. In effect, in that circumstance, the federal-sector employee is placed on the same footing as a private employee. That private-sector case law is not controlling in the federal-sector. context does not diminish its use as persuasive, confirmatory authority where the nature of a federal employee's situation parallels that of a private employee.

In this case, Mr. Mudge's union chose not to pursue his pay-retention claim, electing instead to proceed only with respect to his pay-differential claim, which the union subsequently declined to take to arbitration. *See supra,* at 529. Having been denied access to relief by his union and by FAA, GAO, MSPB, and OPM, Mr. Mudge never succeeded in invoking any administrative forum for re-

dress. *See supra,* at 529. When Mr. Mudge finally filed a complaint in this Court, he acted pursuant to his individual, statutory right, which exists independently of the grievance procedure contained in the collective bargaining agreement. That right to seek judicial relief belongs to him, not his union. Whereas the union's choices bound Mr. Mudge as to administrative remedies, the union lacks power to preclude him from exercising his personal, individual right to seek a judicial remedy.

### B. Divestiture of Individual Rights

■ Union power, even if lacking generally to preclude an individual's statutory right to a judicial forum, arguably might, in a particular case, constrain or restrict the individual member's rights. As previously noted, *Mudge II* did not decide the issue of whether the terms of the collective bargaining agreement negotiated by the union operate to waive his right to seek a judicial remedy. 308 F.3d at 1221, 1232. The government contends that Article 5, Section 2 of the pertinent collective bargaining agreement, which provides that the grievance procedure "shall be the exclusive procedure available to the parties and the employees in the unit for resolving grievances," NTEU Br., Ex. 1 at 7 (Collective Bargaining Agreement, Feb. 1992), should be read to deprive this Court of jurisdiction over Mr. Mudge's claims by excluding resort to any other mode of redress. *E.g.,* Def.'s Reply at 10–11. As the Federal Circuit noted, the grievance procedure may or may not culminate in arbitration, but, if arbitration occurs under the bargaining agreement, it is to be "final and binding." *Mudge II,* 308 F.3d at 1233 (citing 5 U.S.C. § 7121(b)(1)(C)(iii)). In opposition, NTEU relies on the standard explicated in *Wright,* 525 U.S. at 80, 119 S.Ct. 391, re-

---

7. The government also relies on *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 744, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *Gardner–Denver,* 415 U.S. at 53, 94 S.Ct. 1011, to argue that an additional reason why private-sector cases do not apply to the federal-sector context is that private, unlike public, arbitrators only effect the intent of the parties and do not generally invoke public law. Def.'s Reply at 7–8. The government reads too much into these cases. In *Gardner–Denver,* the Supreme Court's comments regarding the role of an arbitrator were

focused on demonstrating that a contractual right to arbitration and a statutory right "have legally independent origins and are equally available to the aggrieved employee." *Gardner–Denver,* 415 U.S. at 52, 94 S.Ct. 1011. *Accord Barrentine,* 450 U.S. at 745, 101 S.Ct. 1437 ("In sum, the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable.").

sponding that the bargaining agreement's grievance provisions do not constitute a "clear and unmistakable" waiver of Mr. Mudge's right to a judicial forum. *E.g.,* NTEU Br. at 19–23.

The government's attempt to invoke a waiver of Mr. Mudge's rights through the collective bargaining agreement is bereft of support. First, the collective bargaining agreement took effect in February 1992, prior to the 1994 amendment to Section 7121(a)(1) by which "Congress expanded the scope of [a unionized federal] employee's rights." *O'Connor,* 308 F.3d at 1244. Article 5, Section 2 of the bargaining agreement merely restates, in almost identical language, Section 7121(a)(1) as it existed prior to its amendment. The bargaining agreement's exclusivity provision cannot evidence a conscious intent by the parties to divest an individual right that did not yet exist at the time the agreement was written.

Second, there is nothing in the bargaining agreement that explicitly purports to divest an individual unit member of the right to a judicial forum. Although the term "grievance" is defined in the bargaining agreement to include "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment as provided in the Civil Service Reform Act of 1978," NTEU Br., Ex. 1 at 7 (Collective Bargaining Agreement, Article 5, Section 1.c.(2)), this language does not expressly and unmistakably waive the right to seek *judicial* redress.

Third, the right to invoke arbitration under the bargaining agreement rests with the union or the agency, not the employee. And, as the facts of this case show, the union has discretion under the bargaining agreement whether or not to pursue arbitration. Because arbitration of disputes is in the hands of the union, and available only at the union's discretion, there is no mandatory arbitral remedy that would displace or waive the right of the individual employees to seek judicial relief. *Cf. Air Line Pilots Ass'n v. Miller,* 523 U.S. 866, 875–79, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998) (objectors subject to agency-shop clause were not required to exhaust a union-provided nonbinding arbitra-tion-process before bringing federal suit); *Mirra Co. v. School Admin. Dist. No. 35,* 251 F.3d 301, 304 (1st Cir.2001) (no agreement to arbitrate where contract "only require[d] non-binding mediation, after which either party may file suit or seek arbitration"). In no sense does the collective bargaining agreement "constitute[ ] a valid agreement [by Mr. Mudge] to submit to binding arbitration" such that "[he] has ... waived his right to press his claim in court." *Mudge II,* 308 F.3d at 1233.

Fourth, there is no evidence that Mr. Mudge had, at any time, personally ratified Article 5, Section 2 of the CBA. *See Restatement (Second) of Agency* § 82 (1958) ("Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."); *see generally* 12 Richard A. Lord, *Williston on Contracts* §§ 35:22 to:25 (4th ed.1999). The record contains no indication that Mr. Mudge at any time affirmed the union's purported waiver of his right to seek a judicial remedy.

In short, the collective bargaining agreement applicable to Mr. Mudge does not independently deprive this Court of jurisdiction over his claim.

### C.  Statute of Limitations

The government's final argument is that the portions of Mr. Mudge's complaint that accrued prior to April 24, 1994, are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501. Def.'s Mot. at 12–13. Section 2501 states, in pertinent part that: "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Thus, the critical date is the date of "accrual." Mr. Mudge contends that he was required to exhaust his administrative remedy before seeking a judicial remedy, making GAO's May 8, 1995 decision denying his appeal the date of accrual, which would be within six years of his filing of the complaint on April 24, 2000. Hr'g Tr. at 44–45. He also argues that the statute of limitations should be tolled during the time that he was

pursuing an administrative remedy. *Id.* at 25, 44–47. The government responds that Mr. Mudge's appeal of FAA's decision to GAO was a permissive appeal, and such appeals do not toll the statute of limitations. Def.'s Reply at 11–12. The government is correct that "a plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." *Martinez v. United States,* 333 F.3d 1295, 1304 (Fed.Cir.2003) (en banc).

■ This case, however, does not fit comfortably within the usual paradigm for computing the date on which a claim accrues. " 'First accrual' has usually been put, in broad formulation, as the time when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." *Nager Elec. Co. v. United States,* 177 Ct.Cl. 234, 368 F.2d 847, 851 (1966). The term "accrual" is not limited to the culmination of the factual events necessary to prove a cause of action but includes the existence of the legal cause of action itself. Thus, more specifically to the circumstances of this case, " '[t]he term 'accrue' in the context of a cause of action means to arrive, to commence, to come into existence, or to become a present enforceable demand or right. The time of accrual of a cause of action is a question of fact.' " *Black's Law Dictionary* 21 (7th ed.1999). Importantly, "[a] cause of action does not necessarily accrue on the date of the wrongful act, but instead when the plaintiff has a legal right to maintain his or her action, leaving the court to ascertain when such action effectively could be initiated." 1 Calvin W. Corman, *Limitation of Actions* § 6.1, at 373–75 (1991) (footnotes omitted).

In the instant case, Mr. Mudge's cause of action did not come into existence until October 29, 1994, when the President signed the bill containing the amendment to Section 7121(a)(1), removing a bar to seeking a judicial remedy. *See* Pub.L. No. 103–424, § 9(c), 108 Stat. 4361 (1994). Although some of the allegedly wrongful acts occurred prior to this date, Mr. Mudge did not have a legal right to maintain his action in this Court until passage of the amendment. Thus, Mr. Mudge's cause of action accrued on October 29, 1994. He filed his complaint on April 24, 2000, which is within six years of the date of accrual and is therefore not barred.

In October 1994, Mr. Mudge was endeavoring to perfect the remedy then available to him through the contract-based administrative grievance procedure. His claims were far from stale. In these circumstances, the 1994 amendment gave a new and transformed life to a matter being actively controverted and in doing so reached back in time in a limited sense that is neither arbitrary nor irrational. *See International Union of Elec. Workers, Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 237–244, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (180–day extended limitations period established by 1972 amendments to Title VII of the Civil Rights Act of 1964 applied to claim, notwithstanding that claim was untimely under a then-existing 90–day limitations period since it was filed 108 days after discharge); *In re TMI,* 89 F.3d 1106 (3d Cir.1996) (approving retroactive application of amended choice-of-law provision in Price–Anderson Act and consequently applying shorter statute of limitations to pending causes of action).[8]

Because the government's motion in the alternative for summary judgment rests on the same grounds as those put forward regarding its motion to dismiss, and the motion for summary judgment has no independent basis, the alternative motion must also be rejected.

## CONCLUSION

For the reasons stated above, the government's motion to dismiss or, in the alterna-

---

8. Section 2501 is a true statute of limitations and not a statute of repose. As the Fourth Circuit said in *Shadburne–Vinton v. Dalkon Shield Claimants,* 60 F.3d 1071, 1078 (4th Cir.1995), "[u]nlike a statute of limitations which generally runs from the time a cause of action accrues, the statute of repose in this case runs from the date the product was first purchased." Statutes of limitation are procedural, reflecting "public policy ... and do not confer upon defendants any right to be free from liability, although this may be their effect." *Id.* (quoting *Goad v. Celotex Corp.,* 831 F.2d 508, 511 (4th Cir.1987)).

tive, for summary judgment, is DENIED. The parties are ordered to file a Joint Status Report on or before February 20, 2004, that addresses further proceedings in this case.