George William CURTIS,
et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 00–632C.

United States Court of Federal Claims.

Feb. 23, 2004.

---

**544**

Gregory K. McGillivary, Washington, D.C., attorney of record for plaintiffs. Molly A. Elkin, Of Counsel.

David R. Feniger, Department of Justice, with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Donald E. Kinner, Assistant Director, and Pedro DeJesus, Of Counsel, United States Navy for defendant.

Gregory O'Duden, General Counsel, with whom were Barbara A. Atkin, Deputy General Counsel, and Timothy B. Hannapel, Assistant Counsel for Amicus Curiae National Treasury Employees Union.

**OPINION**

MEROW, Senior Judge.

In this case, former and current employees of the Naval Surface Warfare Center Division, Crane Division ("NSWCD" or "plaintiffs") seek recovery for overtime pay and other relief pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. The matter is now before the court on defendant's motion to dismiss pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(6) for failure to state a claim upon which relief can be granted.[1] Alternatively, defendant moves for summary judgment. For the reasons stated below, defendant's motion is DENIED.

**Background**

Plaintiffs are former and present employees working in technician and various other positions in the NSWCD, a unit of the United States Navy. They have been assigned to the Marine Corps Program Department ("MCPD") which is based is Fallbrook, California and Hawthorne, Nevada. While employed with the MCPD, plaintiffs were aligned to the Naval Weapons Station ("NWS"), Seal Beach, California. As employees of the MCPD, plaintiffs were members of the American Federation of Government Employees ("AFGE") Local 3723, Unit Q. As the MCPD was realigned to the Naval Warfare Assessment Station, Corona, California and later to the NSWCD, Crane, Indiana, AFGE Local 3723, Unit Q remained the exclusive bargaining unit representative for all employees assigned to the MCPD. On March 4, 1992, NWS entered into a collective bargaining agreement ("CBA") with Local 3723, Unit Q.App. A to Def.'s Mot. to Dismiss ("Def.'s App.")

Article 1 of the CBA provides that "[t]his Agreement is subject to the provisions of existing and future laws and the regulations of appropriate authorities, . . . ." Article 18, "HOURS OF WORK," states that the "basic forty (40) hours workweek will consist of five (5) consecutive eight (8) hour days, Monday

---

1. Although defendant's initial brief requested dismissal pursuant to both RCFC 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6), the government subsequently represented to the court that it now relies solely on 12(b)(6) as a basis for dismissal. *See* Def.'s Combined Reply to Pls.' Opp'n to Def.'s Mot. to Dismiss, n. 2.

through Friday, except for those Unit employees whose services are determined by the Employer to require other basic work-weeks." Article 32, Section 1 of the CBA establishes that the "grievance procedure is the only procedure available to the Employer, the Union, and the employees of the unit for the adjustment of grievances over matters within the control of the Employer." Grievances covered by the CBA include any complaint by an employee, the union, or employer for "any claimed violation, misinterpretation, or misapplication of any law, rule or regulation affecting conditions of employment." Section 2 excludes thirteen matters from the grievance and arbitration procedures established under the CBA. Plaintiffs' claims of alleged violations of the FLSA are not listed among the exclusions. The grievance procedure contained in the CBA sets forth a formal three-step process by which a grievance shall first be submitted to the employee's immediate supervisor. If a satisfactory settlement is not reached, it may be submitted to the employee's department head. If the parties are unable to reach agreement under step two, then the grievance may be submitted to the commanding officer. If the parties are still unable to reach a settlement, then either the union or the employer may elect to move a case to arbitration. An employee is unable to individually bring a claim to arbitration. Local 3723, Unit Q has not pursued a FLSA grievance on behalf of the plaintiffs.

Instead, plaintiffs have filed suit in the Court of Federal Claims alleging a violation of the FLSA for failure to provide overtime pay. Specifically, the FLSA provides:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Section 216(b) allows federal employees to seek damages in court for violations of section 207.[2] 29 U.S.C. § 216(b). Under the 1994 amendments to the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 7121(a)(1), the negotiated grievance procedures in a federal collective bargaining agreement are "the exclusive administrative procedures for resolving grievances which fall within its coverage." *See* United States Office of Special Counsel Merit Systems Protection Board: Authorization, § 9c, Pub.L. No. 103–424, 108 Stat. 4361 (codified in sections of 5 U.S.C. and 12 U.S.C.). The CSRA also provides that any "collective bargaining agreement may exclude any matter from the application of grievance procedures which are provided for in the agreement." 5 U.S.C. § 7121(a)(2). Prior to these amendments, the CSRA omitted the word "administrative" and merely stated that the "procedures shall be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1) (1988). In *Mudge v. United States*, 308 F.3d 1220, 1227 (Fed.Cir. 2002) (*Mudge I*), the Federal Circuit concluded that "Congress' addition of the word 'administrative' to § 7121(a) established a federal employee's right to seek a judicial remedy for employment grievances subject to the negotiated procedures contained in his or her CBA." The court held that the plain language of the amended statute "does not limit a federal employee's right to avail him or herself of alternative, non-administrative avenues of redress." *Id.* at 1230. However, the court noted that because the Court of Federal Claims "did not address the issue of whether the terms of Mr. Mudge's [CBA] independently deprived it of jurisdiction, we do not resolve that question on appeal." *Id.* at 1221. On remand, the Court of Federal Claims held that the CBA did not waive the plaintiff's right to seek a judicial remedy and

---

**2.** 29 U.S.C. § 216(b) provides in part that any "employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

**546**

denied the government's motion to dismiss. *Mudge v. United States,* 59 Fed.Cl. 527, 2004 WL 161329, (Fed.Cl. January 26, 2004) (*Mudge II*). The same issue is now before this court.

In their complaint, plaintiffs seek: 1) declaratory judgment that defendant has willfully and wrongfully violated its statutory obligations; 2) an accounting of compensation owed plaintiffs; 3) damages for failure to pay overtime compensation pursuant to the FLSA; 4) interest on their claim for back pay pursuant to 5 U.S.C. § 5596; and 5) attorneys' fees and costs.

**DISCUSSION**

I. Standard of Review

A. Motion to Dismiss

Defendant has moved to dismiss plaintiffs' complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. A motion to dismiss for failure to state a claim "is appropriate where the plaintiff cannot assert a set of facts that support its claim." *New Valley Corp. v. United States,* 119 F.3d 1576, 1579 (Fed.Cir.1997) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d 1166, 1169 (Fed.Cir. 1995)). In considering a motion to dismiss, the court construes all allegations in the light most favorable to the non-moving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed. Cir.1991). The court must presume that the undisputed factual allegations included in the complaint are true. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746 (Fed.Cir. 1988).

B. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one that would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted "if the dispute is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

II. Waiver of Judicial Remedy

A. Union Waiver

Defendant argues that plaintiffs have waived their judicial remedies pursuant to the CBA negotiated between the union and their employer. Therefore, plaintiffs are barred from pursuing their claims in federal court and must resort to the grievance procedures in the CBA. According to section 7111 of the CSRA, "[a]n agency shall accord exclusive recognition to a labor organization if the organization has been selected as the representative, in a secret ballot election, by a majority of the employees in an appropriate unit who cast valid ballots in the election." 5 U.S.C. § 7111(a). A union that has been accorded exclusive recognition "is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit." 5 U.S.C. § 7114(a)(1). Congress has required all bargaining agreements to provide procedures for settling grievances. 5 U.S.C. § 7121(a)(1). Under the CSRA, Congress defined "grievance" to include an employee's complaint concerning "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(c)(ii). According to defendant, the union's power includes the ability to waive plaintiffs' rights as individual employees to pursue a FLSA claim in federal court.

Defendant relies, in large part, on *O'Connor v. United States,* 308 F.3d 1233 (Fed.Cir. 2002), a companion case to *Mudge I,* for "the inevitable conclusion that the grievance procedure shall be exclusive when specifically bargained for in a collective bargaining agreement." Def.'s Mot. to Dismiss at 8. In *O'Connor,* eleven AFGE local unions filed grievances on behalf of their members alleging that their agency had refused to provide

overtime pay in violation of the FLSA. 308 F.3d at 1236–37. Similar to the facts of this case, the CBA held that grievance procedure was the "exclusive procedure available to bargaining unit employee(s) for the resolution of grievances." *Id.* at 1237. The parties entered into a global settlement agreement pursuant to which the agency paid approximately five million dollars and the union agreed not to pursue certain claims to arbitration. *Id.* Almost one year later, some of the individual employees filed suit in the Court of Federal Claims alleging that the agency had violated the overtime provisions of the FLSA. The Federal Circuit, relying on its holding in *Mudge I,* held that the court had jurisdiction over plaintiffs' claims. However, the court further held that the settlement agreement constituted a valid accord and satisfaction of those FLSA claims. The Circuit rejected the plaintiffs' argument that the settlement agreement was binding only on the union and not the individual employees. The court noted that "[p]ursuant to the grievance procedure set forth in the CBA, the union acted on behalf of appellants to settle their FLSA claims. Appellants are therefore bound." *Id.* at 1241. Therefore, defendant argues that plaintiffs are likewise bound by the grievance procedure contained in their CBA.

Plaintiffs and the *amicus curiae,* the National Treasury Employees Union ("NTEU"), respond that Congress has not "evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Do-Well Mach. Shop v. United States,* 870 F.2d 637, 641 (Fed.Cir.1989) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *See also Barrentine v. Arkansas–Best Sys., Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). NTEU argues that defendant has failed to recognize that the 1994 amendment established that the union's ability to negotiate was limited to administrative remedies. Furthermore, NTEU distinguishes *O'Connor* on the basis that the FLSA claims involved in that case had already been the subject of an administrative claim brought by the union on behalf of its members. In this case, plaintiffs' claims have not been pursued by their

union and they are left without an administrative remedy. NTEU interprets *O'Connor* to stand for the proposition that when a union has entered into a settlement agreement pursuant to its powers under a bargaining agreement, an employee is required to follow the grievance procedures and is prohibited from re-litigating those same claims in federal court. Finally, it submits that there is no "clear and unmistakable" waiver in plaintiffs' CBA that would deprive them of their right to a judicial forum. *Wright v. Universal Mar. Serv. Corp.,* 525 U.S. 70, 80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998).

As the *Mudge II* court stated, the Federal Circuit's "conclusion that the employees in *O'Connor* were not entitled to a judicial remedy on the merits did not mean that they were not entitled to seek one." *Mudge II,* 59 Fed.Cl. at 533, 2004 WL 161329, at *5. The Federal Circuit explained that the 1994 amendments to the CSRA:

> allowed federal employees to seek redress of their grievances in court and therefore outside the corners of their collective agreement. Nothing in the 1994 amendments altered the breadth of federal employees' right to administrative grievance relief, however, such administrative rights therefore remain consolidated within the terms of their CBA.

*O'Connor,* 308 F.3d at 1244. The Circuit held that a federal employee could bring suit in federal court because the statutory amendment removed any jurisdictional barrier. *Id.* at 1240. In *O'Connor,* the union had acted by resolving its employees' grievances administratively under the arbitration procedure in the CBA. In *Wright,* 525 U.S. at 80, 119 S.Ct. 391, the Supreme Court commented on the tension between the "seemingly absolute prohibition of union waiver of employees' federal forum rights . . . ." *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) and allowing an individual employee to waive his or her right to pursue an age discrimination claim in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33–35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). However, the Supreme Court reserved the issue by holding that no

waiver had been established. *Wright* 525 U.S. at 80, 119 S.Ct. 391.

Subsequent to the Supreme Court's decision in *Wright,* the tension between these two propositions has been examined by several courts of appeals. *See e.g., Bratten v. SSI Serv., Inc.,* 185 F.3d 625, 630–32 (6th Cir.1999); *Albertson's Inc. v. United Food & Commercial Workers Union,* 157 F.3d 758, 760–62 (9th Cir.1998); *Brisentine v. Stone & Webster Eng'g Corp.,* 117 F.3d 519, 522–27 (11th Cir.1997). According to the Court of Appeals for the District of Columbia Circuit, the distinction between the two cases is that "[u]nless the Congress has precluded his doing so, an individual may prospectively waive his own statutory right to a judicial forum, but his union may not prospectively waive that right for him." *Air Line Pilots Ass'n v. Northwest Airlines, Inc.,* 199 F.3d 477, 484 (D.C.Cir.1999), *judgment reinstated,* 211 F.3d 1312 (D.C.Cir.2000) (en banc). According to this line of cases, absent contrary congressional intent, a union may not bargain away an employee's "individual statutory right to a judicial forum ...; the statutory right 'can form no part of the collective bargaining process.'" *Id.* at 485 (quoting *Gardner–Denver,* 415 U.S. at 51, 94 S.Ct. 1011). All of the circuits that have taken up this issue, except for the Fourth Circuit, have agreed with the view taken by the D.C. Circuit. *Id.* at 484. In this case, Congress did not intend that an individual employee's right to bring suit in federal court could be lost through a collective bargaining agreement. In fact, the 1994 amendment to the CSRA was intended to allow "federal employees to seek redress of their grievances in court ...." *O'Connor,* 308 F.3d at 1244; *Mudge II,* 59 Fed.Cl. at 532, 2004 WL 161329, at *5.

Defendant responds that the private sector cases cited by plaintiff and NTEU do not apply to the context of federal employees. In *O'Connor,* the Federal Circuit held that cases dealing with private sector employees:

> [S]tand for the principle that a private sector employee cannot waive or release his right to back wage compensation and liquidated damages under the FLSA. They are inapposite to the instant case, however,

which presents the question of whether a federal employee who, pursuant to the CSRA, is represented exclusively by a union and subject to a CBA, may legitimately relinquish his or her FLSA rights as part of an accord and satisfaction. As the Supreme Court has held, private sector law is not controlling in the context of federal labor controversies.

308 F.3d at 1242 (citations omitted). While the private sector cases dealt with the intent behind the FLSA to protect private employees who were in an unequal bargaining position, such "inequality is not a factor here, because it was precisely this disparity in bargaining power that Congress sought to rectify through passage of the CSRA." *O'Connor,* 308 F.3d at 1243. The government argues that the courts should defer to Congress' intent of "narrowing the role of the judiciary and elevating the role of the arbitrator in resolving federal employee-labor management disputes." *Albright v. United States,* 10 F.3d 790, 794 (Fed.Cir. 1993). However, by enacting the 1994 amendment to the CSRA, "Congress expanded the scope of such an employee's rights." *O'Connor,* 308 F.3d at 1244. The government also attempts to distinguish the private sector cases on the grounds that private arbitrators do not have the "general authority to invoke public laws that conflict with the bargain between the parties." *Gardner–Denver,* 415 U.S. at 53, 94 S.Ct. 1011; *Barrentine,* 450 U.S. at 744, 101 S.Ct. 1437 (remarking that the arbitrator's "task is limited to construing the meaning of the collective-bargaining agreement so as to effectuate the intent of the parties."). Therefore, defendant contends that unlike private arbitrators, public arbitrators can give full effect to the terms of the CSRA. Furthermore, while the FLSA provides "minimum substantive guarantees" for private sector employees, defendant argues that the CSRA provides that federal employees are given the same guarantees through the grievance procedures established by their union. *See Barrentine,* 450 U.S. at 745, 101 S.Ct. 1437. However, the discussion of arbitrators was meant to explain that statutory rights and contractual rights are separate. The Supreme Court noted that the "arbitrator has authority to resolve only

questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII." *Gardner–Denver,* 415 U.S. at 53–54, 94 S.Ct. 1011. Moreover, the federal employees in this case have not had such protection and are placed in a similar situation as private sector employees. Plaintiffs are left without administrative recourse where their union has not pursued a grievance on their behalf. Faced without an administrative resolution, plaintiffs are not protected by their CBA and must rely on the protections afforded by statute. Therefore, the private sector cases provide convincing reasoning that is applicable to the current situation. As the *Mudge II* court held, the federal employee in that case:

> [A]cted pursuant to his individual, statutory right, which exists independently of the grievance procedure contained in the collective bargaining agreement. That right to seek judicial relief belongs to him, not his union. Whereas the union's choices bound Mr. Mudge as to administrative remedies, the union lacks power to preclude him from exercising his personal, individual right to seek a judicial remedy.

59 Fed.Cl. at 534, 2004 WL 161329, at *7. In this case, plaintiffs have similarly exercised their rights as individual federal employees to seek judicial redress for violations of the FLSA outside the corners of their CBA.

B. CBA Waiver

■ Even if the union has the power to negotiate an individual's right to file suit in federal court, plaintiffs and NTEU contend that this particular CBA does not purport to waive such a right. Defendant maintains that Article 32, Section 1, which establishes that the "grievance procedure is the only procedure available . . . for the adjustment of grievances . . .", precludes plaintiffs from pursuing the FLSA claim in federal court. The CBA language does not bar plaintiffs' FLSA complaint in the Court of Federal Claims, however, because it does not explicitly cover claims of individual statutory rights. The CBA grievance and arbitration provisions do not contain a "clear and unmistak-

able waiver of the covered employees' rights to a judicial forum . . . ." *Wright,* 525 U.S. at 82, 119 S.Ct. 391. The Supreme Court held "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." *Id.* at 80, 119 S.Ct. 391. Arbitration clauses in other bargaining agreements have been found to contain clear and unmistakable waivers of judicial remedies under two situations. First, if the arbitration clause provides that. employees specifically agree to present all federal statutory claims relating to their employment to arbitration. *See Rogers v. New York Univ.,* 220 F.3d 73, 76 (2nd Cir.2000) (citing *Carson v. Giant Food, Inc.,* 175 F.3d 325, 331–32 (4th Cir.1999)); *See also Bratten,* 185 F.3d at 631. However, the arbitration clause at issue is general and does not explicitly waive plaintiffs' FLSA claims. *Mudge II,* 59 Fed.Cl. at 535, 2004 WL 161329, at *8 ("[T]here is nothing in the bargaining agreement that explicitly purports to divest an individual unit member of the right to a judicial forum."). Second, a waiver of a statutory right must explicitly incorporate the statute's requirements. *See Wright,* 525 U.S. at 80–81, 119 S.Ct. 391. The CBA at issue does not explicitly make compliance with the FLSA a contractual obligation that is subject to the grievance and arbitration procedure. Article 18 provides that the basic workweek "will consist of five (5) consecutive eight (8) hour days" and that "overtime assignments will be distributed and rotated fairly and equitably among qualified and interested employees." However, these provisions of the CBA fail to identify the FLSA by name or citation and do not obligate individual members to arbitrate their claims under the grievance procedure.

Additionally, defendant's argument that Article 32 purports to waive plaintiffs' judicial remedies is contradicted by the fact that the CBA took effect in March 1992, before the 1994 amendment of the CSRA. At the time, the language of section 7121(a)(1) provided that the negotiated grievance procedures "shall be the exclusive procedures for resolving grievances." 5 U.S.C. § 7121(a)(1) (1988). In *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.1990), superseded by statute as stat-

**550**

ed in *Mudge I,* 308 F.3d at 1227, the Federal Circuit held that the pre–1994 language prevented federal employees from pursuing in court claims covered by their CBA. The CBA in this case, entered into after *Carter,* states in similar language that the "grievance procedure is the only procedure available . . . ." Therefore, it is clear that individual members lacked the statutory right to resolve their FLSA claims in federal court when the CBA was negotiated. The language merely incorporated applicable law existing at the time and cannot serve as a waiver of a future statutory right. Finally, NTEU argues the post–1994 amendment is explicitly incorporated into the CBA pursuant to Article 2 which provides that the CBA "is subject to the provisions of existing and future laws . . ." NTEU contends that Article 2 incorporates any "law of government-wide applicability that takes effect after the CBA's effective date is controlling, to the extent that it conflicts with the CBA." Brief of *Amicus Curiae,* NTEU, at 18. In any event, this provision reinforces the principle that "an agreement should be interpreted in such a fashion as to preserve, rather than destroy, its validity . . . ." *Wright,* 525 U.S. at 81, 119 S.Ct. 391. Therefore there is no support for the proposition that the CBA at issue, in and of itself, deprives plaintiffs of the opportunity to pursue their FLSA claims in federal court. *Mudge II,* 59 Fed.Cl. at 535, 2004 WL 161329, at \*8 ("In short, the collective bargaining agreement applicable to Mr. Mudge does not independently deprive this Court of jurisdiction over his claim.")

### CONCLUSION

(1) Defendant's Motions are **DENIED**;

(2) The parties are directed to consult and prepare a Joint Status Report to be filed no later than March 23, 2004, proposing the further proceedings required in order to resolve the remaining issues in this matter.