**Donald O'CONNER, et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 00–343C.**

United States Court of Federal Claims.

March 30, 2004.

Steven R. Hickman, Tulsa, OK, for plaintiffs.

Sheryl L. Floyd, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. James T. Abbott, U.S. Department of Defense, of counsel.

## *OPINION*

MILLER, Judge.

This case is before the court after oral argument on defendant's second motion to dismiss or, in the alternative, second motion for partial summary judgment. Plaintiffs are covered by a collective bargaining agreement that commits them to binding arbitration of their grievances. Intervening between defendant's two dispositive motions was an appellate ruling that overturned dismissal of plaintiffs' claims for lack of jurisdiction, but affirmed this court's alternate ruling on the merits that certain claims were barred

by a settlement agreement negotiated by plaintiffs' unions. For the present motion, defendant separates plaintiffs into three categories: 1) plaintiffs with job categories listed in an appendix to the settlement agreement that provided for the payment of past and certain future claims and for arbitration of disputes about overtime pay eligibility in the future; 2) plaintiffs represented by 8 additional bargaining units that signed the same settlement agreement, as well as those plaintiffs represented by other bargaining units that signed agreements substantially similar to the settlement agreement; and 3) plaintiffs who have failed to file written consents to this suit within the period mandated by the applicable statute of limitations. This court's preliminary task is to determine whether these categories appropriately group the plaintiffs. Provided that the categories withstand plaintiffs' attempts to elude them, the court next considers whether the mandate rule precludes the first category of plaintiffs from pursuing their claims, whether the doctrine of law of the case bars the claims of those plaintiffs in the second category, and whether the claims of those plaintiffs who have not filed written consents must be dismissed.

## FACTS

Because the facts of this case appear in two prior opinions, only a brief summary follows. *See O'Connor v. United States*, 308 F.3d 1233 (Fed.Cir.2002) (*"O'Connor II"*), *rev'g in part, aff'g in part* and *remanding* 50 Fed.Cl. 285 (2001) (*"O'Connor I"*). An asserted violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (2000) ("FLSA"), provided the impetus for this case. Plaintiffs claimed that the Defense Logistics Agency (the "DLA") failed to compensate the overtime work performed by defense contract workers at the General Schedule ("GS") grade levels of 9 and above.

The American Federation of Government Employees ("AFGE"), Local 2433, served as the exclusive bargaining unit representative for 261 employees of the Defense Contract Management District of the West ("DCMDW").[1] AFGE Local 2433's collective bargaining agreement (the "CBA") bound all bargaining unit employees, including those 261 DCMDW employees who became plaintiffs before the Court of Federal Claims in *O'Connor I*. The CBA provided that a four-step grievance process would be the exclusive procedure for resolving grievances.

Ten other AFGE locals also filed "substantively identical" grievances against the DLA. *O'Connor I*, 50 Fed.Cl. at 287. On July 14, 1999, those 11 AFGE locals executed a global settlement agreement resolving the union grievances, which was signed by the president of AFGE Local 2433 (the "Settlement Agreement"). Appendix C to the Settlement Agreement listed positions, the status of which as FLSA exempt or non-exempt was in dispute. The 81 plaintiffs in Appendix C positions accepted $200.00 payments from the DLA and agreed that, "[i]n exchange for this payment, no backpay, interest or liquidated damages will accrue for employees who occupy the positions identified in Appendix C for FLSA claims for the time period between the date the agreement is signed and nine months thereafter—i.e., up to April 14, 2000." *O'Connor I*, 50 Fed.Cl. at 288.

In *O'Connor I* this court granted defendant's motion to dismiss due to lack of subject matter jurisdiction. Assuming, however, that jurisdiction were present, the court ruled that defendant would be entitled to partial summary judgment on the ground that the Settlement Agreement constituted an accord and satisfaction. In deciding that defendant had discharged its burden, thereby entitling it to partial summary judgment in its favor, the court concluded that the "Settlement Agreement was intended to resolve the FLSA claims of all the bargaining unit employees occupying the positions at the GS-9 level or above." *O'Connor I*, 50 Fed.Cl. at 294. Those bargaining unit employees en-

---

1. The DCMDW is one of three districts comprising what now is termed the Defense Contract Management Agency ("DCMA"), along with the East and International districts. The DCMA formerly was known as the Defense Contract Management Command ("DCMC"), which separated from the DLA in March 2000. The DCMA supervises and administers contracts for the delivery of goods and services to the military.

compassed plaintiffs from AFGE Local 2433 holding GS-9 positions or above.

The Settlement Agreement satisfied the requisites for accord and satisfaction: proper subject matter, competent parties, a meeting of the minds, and consideration. The court also found AFGE Local 2433 to be a competent representative, as per the Civil Service Reform Act provision, 5 U.S.C. § 7121(a)(2)(c)(iii) (2000) (the "CSRA"), which stipulates that the "union is the exclusive and binding representative for all federal employees, even those not belonging to the union." *O'Connor I,* 50 Fed.Cl. at 294. The Settlement Agreement "confirm[ed] the parties' mutual intention to satisfy fully plaintiffs' claims." *Id.* at 295. As evidence of this intent, the court quoted language of the Settlement Agreement indicating that the $5,285,000.00 was derived by dividing the total, minus attorneys' fees, among the bargaining unit employees in the eleven participating locals.[2]

The Federal Circuit reversed, in part, holding that jurisdiction was present, but also affirmed, in part, upholding the court's alternative grant of partial summary judgment. Because plaintiffs-appellants conceded that AFGE Local 2433 was their exclusive bargaining unit representative, the Federal Circuit found no merit in the argument that an accord and satisfaction would bind only the union, but not individual employees. The CSRA provides that a local has the right "in its own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances." 5 U.S.C. § 7121(b)(1)(C)(i). The union followed the grievance procedure outlined in the CBA and "acted on behalf of appellants [3] to settle their FLSA claims. Appellants are therefore bound." *O'Connor II,* 308 F.3d at 1241.

Appellants had conceded that the settlement agreement satisfied the accord and sat-

isfaction requirements. *See O'Connor II,* 308 F.3d at 1240. The Federal Circuit rejected plaintiffs' remaining argument that the doctrine of accord and satisfaction could not apply to FLSA claims. Distinguishing *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (holding employee cannot waive FLSA rights), and *Lynn's Food Stores v. United States,* 679 F.2d 1350 (11th Cir.1982) (holding settlement of FLSA claim requires court or Department of Labor approval), as inapplicable to federal employees, the court noted that, in contrast, the CSRA "encourages federal employees to participate in labor unions in order to avoid exactly the sort of unjust arrangements experienced by Lynn's Food's employees by attaining an equal bargaining position vis-à-vis their employers." *O'Connor II,* 308 F.3d at 1239, 1244. No case law or statutes subjected the federal employees' settlement agreement to the same supervisory requirements necessary for such agreements in the private sector. Accordingly, the grant of partial summary judgment in defendant's favor was affirmed because the Settlement Agreement constituted a valid accord and satisfaction. *See id.* at 1244.

The Federal Circuit remanded the case for further proceedings. Now the court must determine which plaintiffs, in addition to those whose claims specifically were resolved in *O'Connor I* and affirmed in *O'Connor II,* also are bound to this holding.

## DISCUSSION

Defendant moves to dismiss, or, in the alternative, for partial summary judgment, contending that accord and satisfaction bars the claims of all plaintiffs who participated in settlement agreements executed in 1999 and 2000 between various federal labor unions and the DLA in resolution of the FLSA claims.[4] Defendant identifies three distinct categories of plaintiffs whose claims it would

---

2. Whether the union ultimately distributed the award to all bargaining unit employees or only to those who participated in the grievances was a separate matter.

3. Appellants were defined as "employees of the [DCMDW ... who sought] compensation, liquidated damages, interest, attorney fees, and costs

for overtime allegedly worked in violation of § 207 of the [FLSA]." *O'Connor II,* 308 F.3d at 1236.

4. Defendant's Appendices A through S and U list the names of plaintiffs covered by the various settlement agreements.

subject to the decision in *O'Connor I* and its partial affirmance in *O'Connor II* based on the mandate rule and law of the case doctrine. Defendant also asserts that the claims of those plaintiffs who have not filed written consent forms should be dismissed. Each category of plaintiffs will be analyzed separately.

RCFC 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed.Cir.2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed.Cir. 2001).

No genuine issue of material fact exists when a rational trier of fact could only arrive at one reasonable conclusion. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553 n. 3 (Fed.Cir. 1996). In such cases there is no need for a trial, and the motion for summary judgment must be granted. Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 971 (Fed.Cir.2001); *General Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1353 (Fed.Cir.1999).

If the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, the motion for summary judgment should be denied. Although evidence may be presented in the form of affidavits by knowledgeable persons, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984), mere assertions, conclusory allegations, or arguments by counsel are insufficient to demonstrate that an issue requires trial. *See Glaverbel S.A. v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1561–62 (Fed.Cir.1995); *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed.Cir.1984) ("Argument and assertion of counsel cannot substitute for factual statements under oath that establish a genuine material issue of fact."); *see also* RCFC 56(f); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985) (noting that non-movant must demonstrate an evidentiary conflict by more than conclusory statements or mere denials). If further discovery would not preclude summary judgment, the court may elect to proceed to summary judgment, may order a continuance to allow affidavits to be obtained, or may issue any other just order.[5] *Q–Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir.2004).

As their overarching argument, plaintiffs contend that, as to each category, defendant has failed to meet its burden of proof. Accord and satisfaction is an affirmative defense, obligating defendant to satisfy the burden of proof on its motion. (*See* RCFC 8©). According to plaintiffs, defendant has failed to identify the particular members of the original AFGE locals who chose to settle their FLSA grievances. However, defendant has attached to its motion Appendices A through S, which list by name and respective union each plaintiff purportedly covered by the settlement agreements. Defendant has made a *prima facie* showing of inclusion that transferred the onus to plaintiffs who oppose defendant's motion to provide evidence that any individual plaintiff would not be covered by the applicable agreement.

1. *Whether the mandate rule bars claims of all plaintiffs who were members of AFGE Local 2433*

Defendant asserts that the mandate rule bars the claims of AFGE Local 2433 Appen-

---

**5.** Plaintiff has not made a request pursuant to RCFC 56(f).

dix C plaintiffs. Defendant relies on paragraph 5 of the July 14, 1999 Settlement Agreement, which states: "The Union and the Employer agree to engage in Interest Based Negotiations (IBN) using the services of a mutually agreed upon mediator to attempt to resolve the positions identified in Appendix C, and also to attempt to design a new method to resolve any disputed positions through arbitration or other means." [6] The Federal Circuit quoted *O'Connor I*, stating that the $5,285,000.00 represented " 'all backpay, interest, liquidated damages and attorneys' fees and costs for the positions identified in Appendices A, B, and C incurred in the Union grievances up to the date that this Agreement is signed.' " *O'Connor II*, 308 F.3d at 1238. The agency also paid an additional $200.00 to each employee in an Appendix C position in exchange for avoiding the accrual of backpay, interest, or liquidated damages from the date of settlement to 9 months thereafter. Moreover, Appendix C union members met for mediation in November 2003.[7]

Plaintiffs counter that the Appendix C union members still may pursue claims for overtime after the effective or extended date of the Settlement Agreement and that the claims are barred only to the extent that the individual union members chose to participate in the FLSA grievances. Moreover, plaintiffs insist that the Federal Circuit considered only the issue of whether the union could resolve an FLSA claim on behalf of a member plaintiff and not whether any particular plaintiff falls within the language of a particular settlement agreement.

█ "[A trial] court is free to take any action that is consistent with the appellate mandate, as informed by both the formal judgment issued by the court and the court's written opinion." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1484 (Fed. Cir.1998). The trial court's "actions on remand should not be inconsistent with either the letter or the spirit of the mandate." *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed.Cir.1997) (citing *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). On remand, the mandate is comprised of only the issues of law that the appellate court actually considered or necessarily are inferred from the appellate disposition. *Exxon Corp. v. United States*, 931 F.2d 874, 877 n. 7 (Fed.Cir.1991).

█ The Federal Circuit's ruling applies to all plaintiffs who were members of AFGE Local 2433 during the time period covered by the Settlement Agreement. Because appellants did not contest that AFGE Local 2433 was their exclusive bargaining representative and because § 7121(b)(1)(C)(i) of the CSRA provides that the local has the right to present and process grievances on behalf of any employee, appellants were held to be bound to the union's actions on their behalf to settle their FLSA claims. *See O'Connor II*, 308 F.3d at 1241. *O'Connor I* clarified that "all employees [were] covered by the Settlement Agreement." 50 Fed.Cl. at 295. The Settlement Agreement "intended to resolve the FLSA claims of all the bargaining unit employees occupying the positions at the GS–9 level or above." [8] *Id.* at 294. The effect given to this agreement was affirmed.

Plaintiffs are correct that even members of AFGE Local 2433 may bring FLSA claims for overtime worked during time periods subsequent to the Settlement Agreement as extended. The Settlement Agreement states

---

**6.** Paragraph 5 of the Settlement Agreement continues, as quoted below:

The logistics of the IBN shall be determined as follows:
- The parties will mutually agree upon the dates, time and place of the IBN;
- There will be 5 members of each bargaining team plus attorneys, and each party shall decide the makeup of their own team;
- The Employer shall pay for all travel costs associated with the IBN for Union team members;
- The parties will conduct their IBN meetings and complete their efforts to resolve the disputed positions within 90 days of the date that the settlement agreement is signed. This time limit can be extended by mutual agreement of the parties.

**7.** As of January 16, 2004, the parties were still involved in arbitration regarding these claims and were expecting resolution shortly.

**8.** Defendant does not dispute plaintiffs' argument that grievances filed did not cover plaintiffs with a GS rating below 9.

that the sum paid "represents all backpay, interest, liquidated damages and attorneys' fees and costs for positions identified in Appendices A, B, and C incurred in the Union grievances up to the date that this Agreement is signed." The agreement originally was signed on July 14, 1999, and was extended to January 14, 2001 for those employees whose positions were listed in Appendix C (to the original Settlement Agreement).

### 2. *Eight unions that signed the Settlement Agreement*

Defendant maintains that the law of the case doctrine bars the claims of 8 other unions that also signed the Settlement Agreement of July 14, 1999, as well as the claims of 10 unions that signed agreements "practically identical" or "[a]lmost [i]dentical," *see, e.g.,* Def.'s Br. filed Nov. 4, 2003, at 6, 33, to the Settlement Agreement. Separate analyses follow.

AFGE Local 2136 (San Diego), AFGE Local 2128 (Texas), AFGE Local 3973 (Tucson), AFGE Local 2265 (Minnesota), AFGE Local 3540 (Colorado), AFGE Local 2723 (San Francisco), AFGE Local 1711 (St. Louis), and AFGE Local 2121 (Chicago and Indianapolis) comprise the unions that also have signed the July 14, 1999 Settlement Agreement.[9]

■ " 'The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts.' " *Exxon Corp.,* 931 F.2d at 877 (quoting *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1550 (Fed.Cir.1988)). It does not, however, constrain a trial court's ability to consider issues that the appellate court did not decide. *Id.* at 877. The law of the case doctrine protects the expectations of the parties and promotes development of the case with judicial efficiency. *Suel v. Sec'y of*

*Health & Human Servs.,* 192 F.3d 981, 984 (Fed.Cir.1999).

■ Plaintiffs argue that the Settlement Agreement cannot apply to members of locals if the members did not choose to participate in the grievances and did not receive any payment from the agreement.[10] Paragraph 3 of the July 14, 1999 Settlement Agreement indicates that "$5,060,000 is to be distributed solely at the discretion of the eleven participating locals among employees of those locals who have chosen to participate in the FLSA grievances." Plaintiffs posit that, pursuant to paragraph 3, not all employees who might have FLSA claims chose to participate in the grievances, so that the resolution would not bind those employees for lack of consideration.

Plaintiffs' argument cannot succeed. The law of the case dictates that the Settlement Agreement binds all employees in the bargaining units whose positions were identified in its appendices. The third paragraph of the Settlement Agreement speaks to the right of the locals to distribute funds to participating employees, not to whether all employees represented by the locals are bound.

> The union's retention of the right to distribute the funds to participating bargaining unit employees does not detract from the conclusion that, because the parties computed the amount of the settlement based on the total number of bargaining unit employees occupying the disputed positions, the parties intended for the Settlement Agreement fully to satisfy plaintiffs' claim.

*O'Connor I,* 50 Fed.Cl. at 295. Moreover, the Federal Circuit confirmed that, pursuant to 5 U.S.C. § 7114(a)(1), the local " 'represents and is entitled to act for' appellants" and that, pursuant to 5 U.S.C. § 7121(b)(1)(C)(i), the local has the right " 'in

---

9. Defendant lists only 8 of the 11 unions that signed the Settlement Agreement of July 14, 1999, because AFGE Local 2433 was the subject of *O'Connor I* and *O'Connor II,* and AFGE Locals 1698 and 2144 represented no plaintiffs in this case at the time the Settlement Agreement was signed.

10. At oral argument defense counsel stated that she lacked information regarding certain plaintiffs for whom no more than a name was provided in the complaint. Plaintiffs will be ordered to provide to counsel the corresponding address, union, and social security number for each of those individuals.

its own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances.'" *O'Connor II*, 308 F.3d at 1241 (quoting statutes).

As the Federal Circuit has stated, "By accepting a position covered by the collective bargaining agreement, appellants effectively chose the procedures negotiated by the union." *Carter v. Gibbs*, 909 F.2d 1452, 1458 (Fed.Cir.1990).[11] *Mudge v. United States*, 308 F.3d 1220 (Fed.Cir.2002) (*"Mudge II"*), *Mudge v. United States*, 59 Fed.Cl. 527 (2004) (*"Mudge III"*), and *Curtis v. United States*, 59 Fed.Cl. 543 (2004), are consistent with this approach.

Illustratively, according to *Mudge II*, the Federal Aviation Administration (the "FAA") employed Robert O. Mudge as a mechanic, while a CBA between his union and the FAA governed his employment terms. 308 F.3d at 1221. Mr. Mudge filed a grievance pursuant to the CBA claiming pay differential and pay retention as two separate grounds for relief, but the union pursued only the pay differential claim. His union then failed to initiate arbitration after the rejection of that claim. *Id.* at 1221–22. The Federal Circuit concluded that the "addition of the word 'administrative' to [5 U.S.C.] § 7121(a) established a federal employee's right to seek a judicial remedy for employment grievances subject to the negotiated procedures contained in his or her CBA." *Id.* at 1227. Al-

though the Federal Circuit held that the text of 5 U.S.C. § 7121(a)(1) "does not restrict an employee's right to seek a judicial remedy for such grievances," at the same time the court cautioned that the decision "explicitly [did] not decide whether the addition of the word 'administrative' to subsection (a)(1) permits a federal employee to pursue both arbitration and a judicial remedy under § 7121(a)(1)." 308 F.3d at 1228, 1232. On remand, Mr. Mudge's pursuit of a judicial remedy survived a motion to dismiss, in part, because, unlike plaintiffs in the instant case, he had "never succeeded in invoking any administrative forum for redress." *Mudge III*, 59 Fed.Cl. at 534.[12]

Mr. Mudge's situation paralleled those of plaintiffs in *Curtis* where the local did not pursue a FLSA grievance on behalf of plaintiffs. 59 Fed.Cl. at 545. As the *Curtis* court explained, "Plaintiffs are left without administrative recourse where their union has not pursued a grievance on their behalf. Faced without an administrative resolution, plaintiffs are not protected by their CBA and must rely on the protections afforded by statute." *Id.* at 549.

These cases are in stark contrast to the case at bar where the union locals have pursued an administrative remedy to the point of signing the Settlement Agreement, which has been affirmed as a valid accord and satisfaction. Accordingly, AFGE Local 2136 (San Diego), AFGE Local 2128 (Texas)[13],

11. *Mudge v. United States*, 308 F.3d 1220, 1230–33 (Fed.Cir.2002) (*"Mudge II"*), indicates that *Carter* is overruled to the extent that it is inconsistent with the 1994 amendment to 5 U.S.C. § 7121(a), which added the term "administrative," thus removing a prior bar to certain judicial remedies for the settlement of grievances.

12. Respectfully, this court disagrees with *Mudge III's* distinction of *O'Connor II*. ("The Court's conclusion that the employees in *O'Connor* were not entitled to a judicial remedy on the merits did not mean they were not entitled to seek one." *Mudge III*, 59 Fed.Cl. at 533.) Neither the trial court's opinion issued today in this case nor *Mudge III* resolves the tension between limiting an employee to binding arbitration, once it is initiated—thereby forfeiting judicial access—and interpreting 5 U.S.C. § 7121(a)(1) to preserve an employee's right to judicial access if the union has not presented a claim administratively. In the former case, it can be said that the union has "bargained away," *Mudge III*, 59 Fed.Cl. at 533,

the right to judicial access if it chooses to initiate a grievance on the employee's behalf, unless the employee is free to initiate suit before his claims become subject to a binding settlement agreement or decision of the arbitrator.

13. Plaintiffs fail to create a genuine issue of material fact concerning an alleged repudiation of the settlement agreement signed by AFGE Local 2128. They contend that "the person who purported to enter into the contract on behalf of AFGE, Local 2128, did not have that authority," Plf.'s Br. filed Dec. 3, 2003, at 7, and submit the (sworn) statement of the current president of AFGE Local 2128, Larry W. Johnson. Mr. Johnson asserts that his predecessor as president of Local 2128, Charles A. Anderson, was not authorized under the local's procedures to enter into the Settlement Agreement. "Charles Anderson's act of signing off on the settlement agreement was in direct contradiction to a decision made by a majority vote of the Local's

AFGE Local 3973 (Tucson), AFGE Local 2265 (Minnesota), AFGE Local 3540 (Colorado), AFGE Local 2723 (San Francisco), AFGE Local 1711 (St. Louis), and AFGE Local 2121 (Chicago and Indianapolis) also are bound by the Settlement Agreement through its extension dates.[14] No claim to a judicial remedy can circumvent what the union already has secured for its employees.

### 3. Ten unions that signed substantially similar settlement agreements

■ The unions that signed agreements substantially similar to the Settlement Agreement include National Association of Government Employees ("NAGE") Local R 12–44, National Federation of Federal Employees ("NFFE") Locals 1788, 2060, 2099, as well as AFGE Locals 1906, 2429, 2449, 2723, 2846, and 3024.[15] The Settlement Agreement served as a model for the settlement agreements signed by these unions and purported to resolve the same grievances. The employees covered by these settlement agreements also received a cash settlement. The Appendix C employees received a $200.00 payment for 9 months, while their FLSA status was under negotiation, and, in certain cases, an additional 9–month renewal ensued. Each settlement agreement was signed by a representative of the DLA and a union officer.

Plaintiffs do not counter this argument specifically, other than through their assertions that defendant has not met its burden

of proof and that the Settlement Agreement cannot apply to members of locals if the members did not choose to participate in the grievances and did not receive payment from such agreement. However, counsel's mere assertions may not substitute for factual statements taken under oath in establishing genuine issues of material fact. See Levi Strauss, 742 F.2d at 1404. Defendant notes that these agreements do differ from the Settlement Agreement, but maintains that these differences are insignificant.

The settlement agreement for AFGE Locals 2429, 2723 (Lockheed and Seattle), and 2846 was premised on the Settlement Agreement, but the amount of total payment differed and the $200.00 payment was made in exchange for no backpay, interest, or liquidated damages accruing for employees in Appendix C positions from the date of signature (April 14, 2000) until January 14, 2001. Moreover, that agreement stated that the "FLSA grievances filed by the Union locals shall be subsumed into the Global Arbitration provided for in paragraph 8 of the July 14, 1999 Global Settlement Agreement, a copy of which is attached hereto as Appendix D."

As for the other union locals, defendant proffers the following:

All of the settlement agreements contained terms that were nearly identical to those in the Global Settlement Agreement. Employees identified by the locals received negotiated backpay awards. Positions

---

Executive Board and was also done against the majority vote of the union's membership." (Sworn) Statement of Larry W. Johnson, President, AFGE Local 2128, Nov. 5, 2003, ¶ 2. Moreover, Mr. Johnson avers that, because the arbitrator's determination was upheld that Local 2128's grievance was not arbitrable, Local 2128's only mode of relief now lies in an action in the Court of Federal Claims. Johnson Stmt. ¶¶ 4–5.

For its part, defendant has submitted sufficient evidence to establish that Mr. Anderson was president of the local at the time he signed the FLSA grievances for AFGE Local 2128 on December 15, 1998, and January 5, 1999, as well as the Settlement Agreement on July 14, 1999, after indicating in an e-mail message of December 21, 1998, that Messrs. Mulholland and Hickey would represent the local in the grievance process. Nothing indicates that Mr. Anderson ever relinquished authority to represent the union despite the attempts of its subsequent president,

Mr. Johnson, to repudiate the agreement beginning on February 16, 2000. Mr. Johnson's assertions fail to raise a genuine issue as to Mr. Anderson's authority to bind the union. In any event, it is plaintiffs' burden, not defendant's, to establish that a challenge can be made in this tribunal to the effect that an authorized union president has misrepresented a vote or otherwise acted ultra vires.

14. Exhibit A to this opinion is a spreadsheet reflecting the corresponding dates.

15. Defendant's first list of the 10 unions signing substantially similar agreements differs slightly from the second one in its brief. According to the lists, and confirmed by the locals listed in defendant's appendix, these 10 locals are, as follows: AFGE Locals 1906, 2429, 2449, 2723 (Lockheed & Seattle), 2846, 3024, NAGE Local R12–44, and NFFE Locals 1788, 2060, and 2099.

identified in Appendix A remained exempt. Positions identified in Appendix B were changed to non-exempt. Employees occupying Appendix C positions each received payments of $200 for nine-month[ ] period[s] until March 9, 2001. Some of the terms of the settlement agreements differed to a small extent.

Def.'s Br. filed Nov. 4, 2003, at 20.

The most significant difference between the Settlement Agreement and the September 9, 1999 settlement agreement with NAGE Local R12–44 and NFFE Locals 2060 and 2099 was that the DLA was to provide payment directly to each bargaining unit employee at grade GS–9 or above, as opposed to paying a lump sum to the unions for the unions to distribute. Those parties agreed to "abide by the results of the Interest Based Negotiation (IBN) process and arbitration, should it become necessary, as set forth in the Agency FLSA Settlement Agreement dated July 14, 1999," and also agreed that their agreement "constitute[d] full and final settlement of all retroactive FLSA claims including interest and liquidated damages up to the date of this agreement."

As for the settlement agreements with AFGE Locals 1906, 2449, and 3024, and NFFE Local 1788, the Defense Finance and Accounting Service ("DFAS") was to pay each employee directly. These agreements also differed in that they included additional positions to be covered by the settlement agreements. For these locals the $200.00 payment was made to employees in positions listed in Appendices C and D and provided that no backpay, interest, or liquidated damages would accrue until May 20, 2000. These locals also agreed to abide by the results of the IBN process and arbitration.

Because plaintiffs point to no differences between these settlement agreements and the July 14, 1999 Settlement Agreement that would afford treatment distinct from that provided to the union locals that signed the Settlement Agreement, the law of the case extends to the claims of NAGE Local R12–44, NFFE Locals 1788, 2060, 2099, as well as AFGE Locals 1906, 2429, 2449, 2723, 2846,

and 3024 members. Accordingly, those plaintiffs' FLSA claims for backpay prior to the respective dates[16] are barred by the doctrine of accord and satisfaction.

4. *Plaintiffs who have not filed written consent waivers*

■ Defendant argues that the complaints of those plaintiffs who have not filed written waivers of consent should be dismissed. Pursuant to the applicable statute of limitations, 29 U.S.C. § 255 (2000),

[a]ny action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the [FLSA ...] (a) if the cause of action accrues on or after May 14, 1947— may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

A claim for unpaid overtime accrues at the end of the corresponding pay period, and the action commences "on the date when the complaint is filed," or,

in the case of a collective or class action instituted under the [FLSA] it shall be considered to be commenced in the case of any individual claimant—(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256. This court's order of January 8, 2001 directed: "With respect to each plaintiff, named or added, the statute of limitations shall run from the date on which the consent is filed. Plaintiffs may make a showing for tolling the statute of limitations for

---

**16.** *See* Exhibit A to this opinion.

any plaintiff." Because more than three years have passed since plaintiffs' complaint was filed on July 20, 2000, the claims of those plaintiffs who have not filed consent forms must be dismissed.

Plaintiffs' counter-arguments fail. They assert that where parties hire a lawyer and bring suit in their own names consent forms are superfluous, citing, *inter alia, Chessin v. Keystone Resort Mgmt.,* 184 F.3d 1188 (10th Cir.1999), and *Morelock v. NCR Corp.,* 586 F.2d 1096 (6th Cir.1978).[17] In a claim brought under the Age Discrimination in Employment Act, the Sixth Circuit interpreted 29 U.S.C. § 256, holding that the "action was timely commenced within the applicable limitations period and that plaintiffs were not required to file written consents to become parties to this action." *Morelock,* 586 F.2d at 1099–1100. In *Morelock,* however, only 5 plaintiffs brought their claims before the court, and the opinion contained no discussion as to whether their claims were treated individually or collectively. *See* 586 F.2d at 1098.

The *Chessin* court stated that "[t]he seven named Plaintiffs and twenty-nine additional Plaintiffs who filed written consents under 29 U.S.C. § 216(b) (requiring written consent for employee to be named as party plaintiff in suit under the FLSA) worked as ski patrollers," indicating that only the unnamed plaintiffs must file consent forms. 184 F.3d at 1190. In *Chessin,* however, unlike the instant case, the court had not ordered that, for "each plaintiff, named or added, the statute of limitations shall run from the date on which the consent is filed." Accordingly, claims accruing prior to February 2001 are time barred for those plaintiffs who did not file consent forms.[18]

The considerable burden of classifying plaintiffs fell to defendant's able counsel. Ms. Floyd's usual meticulous legal analysis is responsible for any coherence that has been achieved to date. It is fitting that plaintiffs organize their remaining claims and bear the consequences for failing to do so.

**CONCLUSION**

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion for partial summary judgment is granted in part consistent with the above rulings.

2. By April 26, 2004, plaintiffs shall provide to defendant the corresponding address, union, and social security number for each individual as to whom defendant has indicated that such information has not been provided.

3. By April 26, 2004, plaintiffs shall file a list indicating which individuals should be removed from defendant's list of union member plaintiffs and on what grounds.

4. By May 26, 2004, defendant shall file 4 lists; each shall correspond to parts 1–4 of this opinion and indicate the names of all plaintiffs whose claims are governed by the respective part. Judgment will enter based on these lists.

5. By no later than June 1, 2004, plaintiffs shall file 3 new complaints, as to which the filing fees shall be waived, and the complaints will be deemed filed as of July 20, 2000. Each shall be assigned to the undersigned judge. Proceedings will be expedited.

6. Plaintiffs' 3 new complaints shall cover the claims of and list those plaintiffs in ap-

---

17. First, it should be noted that decisions from other circuits are persuasive authority only. Second, plaintiffs also cite *Wallace v. Water Tank Serv. Co.,* 256 F.Supp. 689 (W.D.Okl.1966), where the court found the case to be "an individual action, not a class or collective action; that the Plaintiff is not required to file a written consent herein under 29 U.S.C. § 216(b); and that for purposes of the two-year statute of limitations this individual plaintiff's action was commenced on the date the complaint was filed." This case is inapposite in that it involves a collective action.

18. Plaintiffs' argument that "tolling may arise from the applicability of the Soldiers' and Sailors' Civil Relief Act as well as Defendant's failure to post the DOL Wage and Hour Notice at the workplace of each Plaintiff," Plf.'s Br. filed Dec. 3, 2003, at 12, is insufficiently detailed to raise a genuine issue of material fact that would preclude summary judgment in defendant's favor. *See Levi Strauss,* 742 F.2d at 1404 (stating that counsel's mere assertions do not establish genuine issues of material fact).

pendices to correspond to subparts (a)-(c) below:

a. Individuals employed in positions below GS-9.

b. Individuals who are categorized as professionals and are ineligible to join a bargaining unit.

c. Individuals whose positions were listed in Appendix B to the Settlement Agreement subsequent to July 14, 1999, and who have not submitted their claims to arbitration.

7. Defendant has provided the groundwork in establishing the foundation for the categories of plaintiffs' claims that this opinion addresses. Should any individuals fall outside of the 3 categories described in ¶ 6(a)-(c) hereof, plaintiffs may formulate a fourth category of such individuals to be included in a new and fourth complaint, provided, of course, that plaintiffs in this fourth category are not covered by this opinion or the three additional categories listed in ¶ 6(a)-(c) hereof. Plaintiffs may file any fourth complaint under the same conditions stipulated in ¶ 5 hereof. Should any of the claims in the fourth complaint be subject to the dispositive rulings in this opinion, the complaint will be dismissed with prejudice as to all plaintiffs named therein pursuant to RCFC 41(b), for failure to comply with an order of the court.